————o————

S. P. Doss, Respondent, *vs.* Missouri, Kansas & Texas R. R. Co., Appellant.

1. *Railroad Companies—Liable in punitive damages, when.*—A railroad company is not liable in exemplary or punitive damages except where the acts of its agents, which brought about the injuries, are wanton or malicious.

2. *Railroads—Stepping from train while in motion—When negligence shown by.*—Whether an attempt to step from a train when in motion is, under the particular circumstances of a given case, such negligence as will relieve the company of responsibility, is a question of fact for the jury.

3. *Railroads—Injuries to person not a passenger acting as escort—Measure of care required of the company.*—The agents of railroad companies are liable for injuries caused by the want of ordinary care, where the person injured was at the train to meet with, or part from, a passenger, although not himself a passenger or employee.

Doss v. Mo., Kas. & T. R. R. Co.

And in a case where plaintiff had in charge a lady and her infant child, *held*, that he was entitled to have sufficient time to escort her to a seat and then to leave the train. If the time of stopping was too short, or if the agent of the road failed to give the usual notice of the starting of the train, there was not an exercise of such ordinary care as the company was bound to employ in order to escape liability.

*Appeal from Vernon Circuit Court.*

*Philips & Vest,* for Appellant.

I. Respondent was not a passenger, nor is it averred that he entered the appellant's cars under any contract with or by permission of appellant, nor that it was necessary for him to have gone on the train. Hence the petition is bad. (Lucas Adm'r vs. Taunton & N. R. R. Co., 6 Gray, 64, 66.)

II. Appellant was under no obligation to give him signals of starting. Neither the custom of the railroads nor the courts have ever given these signals any such office. (Lucas, Adm'r vs. T. & N. R. R. Co., 6 Gray 67.)

III. Respondent's own negligence contributed to his alleged injury, as he attempted to leave the train while in motion, and as proof of the velocity of its motion it is shown that he was flung by its force on the platform. It needs no citation of authorities to show that in such cases, toward a person not a passenger, the carrier was under no obligation to exercise any extraordinary care, but the least incautiousness on his part was most culpable. (18 Barb. S. C., 368; 18 N. Y., 422, 425-6.)

IV. This was no case for punitory damages. If the injury to the person be committed unintentionally, and result simply from a want of care, as in this case, the damages awarded should be compensatory. Exemplary damages in such actions can only be given where the act complained of was willful and intentional. (Goetz vs. Ambs, 27 Mo., 28, 33; McKeon vs. Citizens' R. R. Co., 42 Mo., 80; Franz vs. Hilterbrand, 45 Mo., 121; 2 Greenl. Ev., 250, S. 253, title Damages.)

*Waldo P. Johnson,* for Respondent.

I. A lady with an infant child, and especially in the night-time has the right to be conducted on the cars, even by a per-

son who is not a passenger. And the company is responsible for injuries done him in the premises through the negligence of its agents. (Farwell vs. Boston & N. R. R. Co., 4 Met., 55, 56; S. P. Phil. & Reading R. R. Co. vs. Derby, 14 How., 468; 45 Mo., 255; 46 Mo., 353.)

II. The questions of fact whether plaintiff was on the cars under such conditions as gave him a right to be there, and whether plaintiff was injured by the gross negligence of defendant's servants, and whether plaintiff was guilty of contributory negligence, were all fairly left to the jury and there is no legal ground for disturbing their verdict. (50 Mo., 461; 37 Mo., 240; 26 Mo., 441; 45 Mo., 255; 46 Mo., 353.)

NAPTON, Judge, delivered the opinion of the court.

This action was to recover damages for an injury sustained by plaintiff in stepping down from one of defendant's cars to the platform connected with the station house.

The petition states that defendant, as a common carrier, was bound to provide suitable means of ingress and egress in and from their cars, and suitable platforms, from which passengers could pass into said cars, so that passengers could pass with safety into the cars, and more especially into the car provided for female passengers; and that it was their duty to stop said car, so set apart for female passengers, at such platform so that female passengers could pass into and out of said car with safety.

The petition then alleges that on the 10th of May, 1872, the plaintiff was attending his sister-in-law, with her infant child, to the depot at Nevada, with a view to place them in the ladies' car; that the train stopped in the night-time, and the employees of defendant grossly neglected to stop the ladies' car of said train, at said platform, as they were in duty bound to do, but allowed said car to be stopped at a place distant from said platform. And in consequence of said negligence it became necessary for the lady and her child, who were under plaintiff's charge, to pass through a number of other cars of said train, which were dark and unlighted,

so that by the time the plaintiff, with the lady and child, reached the door of the ladies' car, the train started, without giving any signal, and persons on the train desiring to leave could not do so with safety.

It is averred that any female passenger has a right to be conducted into the car, where she is to be conveyed, and therefore plaintiff, having been requested in this instance by the female passenger to escort her, had a right to be in said car at the time aforesaid, and a right to be duly notified by signal or otherwise of the time of starting said train, so that he could pass therefrom with safety.

Nevertheless, it is further averred, the agents of defendant, with gross negligence started the train without giving any such signal or other notice, and the plaintiff without any negligence on his part, in attempting at the time the train started, to pass from it to the platform, was, in consequence of the sudden and rapid motion of the cars, thrown suddenly and violently against and upon said platform, and received great bodily harm, etc.

The answer denies all the material allegations of the petition. The testimony was to the effect, that the plaintiff, who lived at Nevada, which was near a station on the defendant's road, accompanied his sister-in-law to the station, with a view to see her and her child safely on the cars, on the night of the 15th of May, 1872; that the train was behind time by half an hour or more; that on its arrival, the plaintiff who was on the platform with the lady under his charge, discovered that the ladies' car did not get within ten feet of the platform, and therefore conducted the lady and child to an opening which led to the car immediately behind the baggage or express car, and passed through that car, and perhaps another, until he reached the car next to the sleeping-car; that as soon as the lady was seated, he turned back, and, without having observed that the train was in motion, attempted to get out on the platform, and was thrown or fell upon it and injured.

The evidence in regard to the length of time the train stopped, and as to any signal being given before starting,

either by the usual proclamation from the conductor of "all aboard," or by ringing of the bell, was conflicting. The time the train was stopped was according to all the witnesses, however, between two and five minutes, and the conductor stated, that after his cry of "all aboard," he waved his lantern to the engineer as a signal to move. The customary delay at that station of the express train was, according to the statements of the officers, about two and a half minutes.

The court, at the request of plaintiff, instructed the jury as follows :

1. "The court instructs the jury, on the part of plaintiff, that it was the duty of the railroad company, as a common carrier of passengers, by its agents and employees, to have so stopped the passenger cars at the platform at the depot, as to have made it safe for ingress and egress of passengers into and from the same ; and also to stop the cars for a sufficient length of time to get on and off the cars with safety, and before starting to have given a signal of starting, for such reasonable length of time as to have enabled passengers to get on with safety, and persons to get off with safety, and if the jury believe from the evidence that the plaintiff, as the conductor of his sister-in-law and her infant child, who were taking passage on said cars, put said sister and child as soon as he could, after the train stopped, on the cars and immediately left and attempted to pass from the cars to the platform, and that the cars were started without giving reasonable length of time to get off, and without giving the usual signal of starting, and that in consequence of such negligence on the part of the employees of the company, the plaintiff was injured in getting from said cars, the jury will find a verdict for the plaintiff, and assess the damages at such amount as they may believe from the evidence that the plaintiff has sustained, not to exceed $10,000."

2. "The court instructs the jury, on the part of the plaintiff, that if they find for the plaintiff, they are not confined to the actual damages sustained by the plaintiff, but may take into consideration all the circumstances and facts detailed in

evidence, and may give exemplary or punitive damages in such reasonable amount, above the actual damages sustained, as they believe the evidence warrants."

3. "If plaintiff used due diligence in getting from the car, and if the train was prematurely started, without due and reasonable notice of such starting, and if the plaintiff was not conscious of the starting of such train when he attempted to step from the cars to the platform, then plaintiff is not the less entitled to recover on account of the time and manner of his stepping from the car.

The court refused the following instructions asked by defendant. 1. "If the jury believe from the evidence, that plaintiff was not a passenger on defendant's cars, it was not necessary for him to be notified of the time of the departure of the cars." 2. "That the defendant is not bound to use the same degree of care in regard to the plaintiff, a stranger who voluntarily went upon its cars for the purpose of seeing his sister safely started, that it is to passengers." 3. "That if the jury believe from the evidence, that the plaintiff voluntarily went upon defendant's cars, without the intention of becoming a passenger, and voluntarily left defendant's cars, and was injured while voluntarily leaving said cars, while they were in motion, he cannot recover." 4. "That if the jury believe from the evidence, that plaintiff was not a passenger on defendant's cars at the time of the alleged injury, then it devolves upon him to prove that he was on said cars by authority of some person connected therewith, or that it became necessary for him to go upon defendant's cars at that time, before he can recover. And the mere fact that he went upon the cars for the purpose of seeing his sister seated, without proving the necessity of so doing, and was injured in leaving the cars while they were in motion, will not entitle him to recover."

To the action of the court in refusing those instructions, the defendant duly excepted.

The court, of its own motion, gave the following instructions: "That if the jury believe from the evidence, that

plaintiff was not a passenger on defendant's cars at the time of the alleged injury, it devolves on plaintiff to prove that he was on the cars, by authority of some person connected therewith, or that it became necessary for him to go upon said cars, and plaintiff cannot recover, unless they should believe from the evidence, that it was necessary for him to go on the cars to seat his sister-in-law and child, and the jury are to consider all the circumstances of the case as to whether it was necessary or not for plaintiff to go on the cars."

The defendant duly objected and excepted to the giving of all the above instructions.

The verdict was for plaintiff and the damages assessed at $1,600. Motions for new trial and in arrest were made, which were overruled, and the case is brought here by appeal. The decision of this case depends entirely on the propriety of the instructions given to the jury, and it is obvious that the judgment must be reversed on account of the second instruction given for the plaintiff, on the subject of punitive or vindictive damages. We have decided that such damages may be warranted against a corporation as well as against an individual, where the circumstances of the case authorize them. (Perkins vs. M., K. & T. R. R. Co., 55 Mo., 214.) Therefore, where the agents of a corporation act wantonly or maliciously, the corporation may be held to answer in exemplary damages. But there was no evidence in this case tending to prove any intentional wrong to plaintiff; in fact it appears affirmatively, that the conductor was not aware that the plaintiff was on the train, nor so far as the evidence of the plaintiff himself shows, was the conduct of any of the officers or agents of the defendant, in anywise influenced by any knowledge of the plaintiff's situation, or of his wish to get off the train. An instruction therefore on the subject of punitive damages, was a mere abstraction; but perhaps not a harmless one, since the jury might well infer that the court, in giving such an instruction, was of opinion that there was some evidence in the case to justify it.

The first instruction presents questions of more difficulty, upon which there has been no uniformity of opinion in such adjudged cases as we have been able to find. It is clear, that the same degree of care on the part of a railroad company exacted by the law in regard to passengers, is not required of them, in regard to persons who are not passengers. In the latter case, nothing more is required than ordinary diligence. And whether there is a want of ordinary care in a particular case, depends so much on its attendant circumstances, that a definite rule becomes difficult, if not impossible. The points of negligence averred and insisted on here are: 1st. The failure of the officers to put the passenger cars in connection with the platform, so that passengers could pass into and from them directly to and from the platform; 2nd. The failure to give notice by signal or otherwise to plaintiff of the starting of the train; 3rd. The failure to stop the cars for a sufficient length of time to enable the plaintiff to get on and off the car.

It is intimated, and perhaps decided in some adjudged cases, that a person occupying the position of the plaintiff, is in the position of a mere trespasser, on an implied license, and therefore, although the law requires of railroad companies, as common carriers of passengers, great exactness and care in regulating the departure of trains, and in the giving notice to passengers of such departure, yet such care is not required in relation to persons who are not passengers, or not upon the premises at the instance or request of the company. And it was accordingly held in the case of Lucas, Adm'r vs. T. & N. B. R. R. Co., (6 Gray, 64) that "the rules and regulations presented by a railroad company in relation to the departure of trains and for giving notice to passengers, do not extend to persons who are not passengers, with or without compensation, or who are on the premises without request or instance of the company, and therefore the omission to comply with such regulation is no ground of complaint by one who is not a passenger, if, under the circumstances, the company used ordinary care;" and further, "that the law has not im-

posed upon the railroad company the duty of giving special notice of the train to leave, to persons who are not passengers, with or without compensation, or who are not there at the instance of the company; nor of prescribing by rules a system or method for giving such notice to such persons.

Persons entering the cars, who are not passengers, and without the request or instance of the company, are bound to know the time of departure (if such time be fixed and reasonable public notice given thereof,) and to leave the cars in such season before the time so fixed, as would enable them to get off with care, before the cars are set in motion. With the arrival of the time fixed for the departure of the cars, the implied license or permission ceased, and with it the liability of the defendant, except in case of misfeasance or gross negligence." This was said in a case where a lady had conducted and assisted into the cars, her aunt who was aged and infirm, and affected by disease of the heart and unable to enter the cars without assistance, and upon leaving and attempting to step on the platform after the cars had commenced moving, was precipitated under the wheels, and her arm and leg severed from her body. The court held she had no cause of action, upon the ground that she was on the cars merely by license or permission, and because in such case she attempted to leave the cars after they were put in motion. Whether the usual signals for leaving had been given or not, was treated as an inquiry of no importance, on the ground that the lady (plaintiff) was where she had no right to be—that was on the steps of the car.

We should be very reluctant to hold, that an aged or infirm mother, or sister or wife, or indeed any other woman, especially if incumbered with an infant child, should not be allowed the assistance of a male friend or relative in getting a seat upon a railroad car, and that such friend or relative was to be treated as a mere stranger to the company, having no claim upon the company for an injury under any circumstances. Not being a passenger, it is conceded, that no extraordinary care was required; but whether the neglect of

customary signals would not amount to ordinary negligence, is a matter, upon which the Massachusetts decision is not satisfactory.

The doctrine of the Supreme Court of Pennsylvania in Gillis vs. The Pa. R. R. Co., (8 Am. L. Reg., 729, decided in 1869) seems more consonant with justice.

In that case, a platform connected with the depot at Johnstown extended over a canal, or a chasm once used as a canal, and on the occasion of President Johnson's arrival in the cars, a multitude of people gathered on this platform, to hear the President's speech, and the timbers which supported it gave way, and a number of persons were precipitated into the chasm, some of whom were killed and others seriously injured. The court held, however, that the company owning the road was not responsible to the persons injured, who came through curiosity and had no business with the road; but as to persons who came on the platform to meet or part with passengers, the court held the company bound to have the structure strong enough to bear all who could stand upon it. The judge observed: "Had it been the hour for the arrival or departure of a train, and he (the plaintiff) had gone there to welcome a coming or speed a parting guest, it might very well be contended that he was there by authority of the defendants, as much as if he was actually a passenger, and it would then matter not how unusual might have been the crowd, the defendants would have been responsible. As to all such persons to whom they stood in such a relation as required care on their part, they were bound to have the structure strong enough to bear all who could stand on it. As to all others they were liable only for wanton or intentional injury. The plaintiff was on the spot merely to enjoy himself, to gratify his curiosity, or to give vent to his patriotic feelings. The defendant had nothing to do with that."

This seems the more reasonable doctrine and is sanctioned by the recent English cases of Gautrel, Adm'r vs. Egerton Law Rep., (2 C. P., 371); Holmes vs. N. E. R. Co. Law Rep., (4 Exch., 254). And if a person who visits a railroad train to

welcome a coming guest, or speed a parting one, is held to have claims on the railroad company for ordinary care, surely one who attends a female passenger, incumbered with an infant and a satchel, is entitled to hold the company to equal responsibility.

The first part of instruction number one, given for the plaintiff in regard to the duties of defendant, in relation to its passengers, though abstractly correct, was outside of the case on trial. That instruction declared that "it was the duty of the railroad company, as a common carrier of passengers by its agents and employees, to have so stopped the passenger cars at the platform of the depot, as to have made it safe for ingress and egress of passengers into and from the same."

This is true, but the plaintiff was not a passenger, and no injury happened to the lady, who was a passenger, by reason of the failure of all the passenger cars to be placed within reach of the platform. But the plaintiff was entitled to have sufficient time to escort the lady under his charge to her seat, and then leave the cars. If the time was not enough, or if the defendant's agents failed to give notice of the starting of the train, by the usual signals, of an oral cry of "all aboard" from the conductor, and the ringing of the bell by the engineer, it was not such ordinary care as the defendant was bound to exercise, both towards passengers and persons in the situation of plaintiff. And these questions of fact were therefore properly submitted to the jury by the court.

Whether the attempt of plaintiff to step from the cars when the train was in motion, was under the circumstances of the case, such negligence as would relieve the defendant of all responsibility for accident, is a question of fact for the jury, as this court held in the case of Wyatt vs. Citizen's R. R. Co., 55 Mo., 485; Karle vs. K. C., St. Jo., & B. R. R., Id., 476; Loyd vs. Hann. & St. Joe. R. R. Co., 53 Mo., 509; Burham vs. St. Louis, & I. M. R. R., 56 Mo., 338. These are risks which the most prudent men will take, and the plaintiff will not be barred of a recovery for his in-

jury, if he adopted the course which most prudent men would take under similar circumstances. For a person to jump from a car, propelled by steam, when it is in rapid motion, may be regarded as mere recklessness ; but to step from a car not yet beyond the platform, and whose motion is so slight as to be almost or quite imperceptible, may not be negligence, and whether it is or not, is for the jury to decide from the physical condition of the person, and all the attendant circumstances. A young, healthy and vigorous man may assume risks which would be culpable negligence in another of feeble health or protracted age. (Shearm. and Redf. Neg., Ch. 30; Foy vs. Brighton R. R. Co., 18 C. B. N. S., 225; Filer vs. N. Y. Central R. R., 49 N. Y., 47.)

If the first instruction asked by defendant is understood to mean any special notice to plaintiff, it was correct and should have been given. It was the plaintiff's business to make himself acquainted with the usual delay of the train at Nevada, and with the usual signal for the starting of the train, and if that signal was given in time for plaintiff to have left the cars, his delay was at his own risk. It was impossible for the conductor to know that the plaintiff, in going on the cars, did not intend to go as a passenger. He was therefore entitled to no other notice than such as was given to passengers, to enable them to get on and off the cars.

The third and fourth instructions asked by defendant were properly refused.

The judgment is reversed and the cause remanded; the other judges concur.