Weber v. The K. C. Cable Ry. Co.

## WEBER v. THE KANSAS CITY CABLE RAILWAY COMPANY, *Appellant.*

1. **Railroads:** RATE OF SPEED : ORDINANCE : NEGLIGENCE. A cable railway company in running its trains at a rate of speed prohibited by ordinance is guilty of negligence *per se.*

2. ———— : ———— : NEGLIGENCE. Where a passenger alights from a cable car while running at a rate of speed prohibited by ordinance and is injured by a similar car moving in the opposite direction, it cannot be said that the speed of the train had no direct agency in causing the injury.

3. ———— : CARRIERS OF PASSENGERS : DEGREE OF CARE : CONTRIBUTORY NEGLIGENCE. While carriers of passengers are held to a very high degree of care, there is a corresponding obligation on the part of the passenger to act with prudence, and if his negligent act contributes to bringing about the injury he cannot recover.

4. ———— : CONTRIBUTORY NEGLIGENCE : PRACTICE. Ordinarily contributory negligence is a question of fact for the jury. But, if it appears, without any conflict of evidence from the plaintiff's own case, or from the cross-examination of his witnesses that he was guilty of negligence proximately contributing to produce the injury, it would be the duty of the court to take the case from the jury.

5. ———— : ———— : ————. Where the undisputed facts relied on to establish contributory negligence are such as may, in the judgment of sensible men, lead to different conclusions as to whether they establish want of care, the question of negligence on the part of the plaintiff should be submitted to the jury.

6. ———— : ———— : ALIGHTING FROM MOVING TRAIN. The fact that the door of a cable car was open on the side next to the parallel track, and no guard there to prevent persons from getting off through it, cannot be construed as an invitation to a passenger to alight while the train was at full speed. The fact that the train did not stop or check up was a warning to the passengers not to get off.

7. ———— : ———— : ————. Whether a party jumping or stepping from a moving car is guilty of negligence must depend upon other circumstances than the speed of the car. If the rate of speed is so high and the place of descent so obviously perilous that a person of ordinary prudence would not attempt to get off, the act is contributory negligence and will bar a recovery.

Weber v. The K. C. Cable Ry. Co.

8. ——— : DUTY TO PASSENGERS. A railroad company is in duty bound to stop its cars and let them remain at rest long enough for persons to get on and off with safety and the servants in charge of an approaching train must govern their conduct accordingly.

9. ——— : ——— : CONTRIBUTORY NEGLIGENCE. One in the possession of his faculties who was accustomed to cable cars and must have known that they passed each other every few minutes, who left his seat without signifying to the brakeman near him any desire to get off, and who without any reason to believe the cars would stop went to the door of the car and jumped off while it was in full speed and was injured by an approaching train without looking for it when he might have seen it had he looked, is guilty of such contributory negligence as bars a recovery.

10. Practice: DEMURRER. A defendant does not waive his demurrer to the plaintiff's evidence by putting in his own evidence; by so doing he takes the chance of aiding the plaintiff's cause, but is not thereby deprived of the right to ask the court to direct a verdict on all the evidence.

### On Rehearing.

1. ——— : EXCEPTIONS. A recital in a bill of exceptions that "said instructions numbers 10, 11, 12, etc., as asked, the court refused, to which refusal of the instructions, the defendant by its counsel then and there excepted at the time," entitles the party so excepting to have each refused instruction considered in the appellate court.

2. ——— : ———. The ground assigned for a new trial that "the court erred in refusing to give instructions numbers 10 to 22 inclusive asked by the defendant" is sufficient.

3. ——— : DEMURRER. When a demurrer to plaintiff's evidence is made and overruled and the defendant puts in his evidence, the appellate court in reviewing the ruling will do so in the light of all the evidence. If upon all the evidence, no matter by whom or when offered, there is a case to go to the jury, the ruling will not be reversed, though the demurrer to the plaintiff's evidence should have been given, as the case stood when it was interposed.

*Appeal from Clay Circuit Court.*—HON. J. M. SANDUSKY, Judge.

REVERSED.

*Johnson & Lucas* for appellant.

(1) Defendant's objection to the introduction of any evidence ought to have been sustained. The petition shows that plaintiff was guilty of contributory negligence, in stepping from a rapidly moving train in front of another, approaching at the same rate of speed, from the opposite direction. *Leslie v. Railroad*, 88 Mo. 50; *Nelson v. Railroad*, 68 Mo. 596. (2) The court admitted incompetent evidence, viz., section 3, page 288, of printed ordinances of City of Kansas. It applied to horse cars only, and had no application to defendant. (3) Defendant's demurrer ought to have been sustained. (*a*) An unavoidable inference of contributory negligence arises out of plaintiff's evidence. Thompson on Trials, sec. 1680; *Milburn v. Railroad*, 86 Mo. 104; *Buesching v. Gas Co.*, 73 Mo. 229. (*b*) The negligence charged was not the proximate cause of the injury. *Stepp v. Railroad*, 85 Mo. 229; *Harlan v. Railroad*, 18 Mo. App. 483; 65 Mo. 22; *Kelley v. Railroad*, 75 Mo. 138; *Powell v. Railroad*, 76 Mo. 82. (*c*) The proximate cause of the injury was plaintiff's leaping in front of an approaching car. *Henze v. Railroad*, 71 Mo. 636; *Purl v. Railroad*, 72 Mo. 171; *Stevens v. Railroad*, 75 Mo. 191; *Leduke v. Railroad*, 4 Mo. App. 485. (4) There was no evidence that the proximate cause of the injury was the rate of speed at which the trains ran. *Ashbrook v. Ave. Co.*, 18 Mo. App. 290; *Harlan v. Railroad*, 18 Mo. App. 483; *Leduke v. Railroad*, 4 Mo. App. 485; *Holman v. Railroad*, 62 Mo. 562; *Fletcher v. Railroad*, 64 Mo. 484; *Wallace v. Railroad*, 74 Mo. 594; *Railroad v. Natje*, 66 Ill. 455; *Kelley v. Railroad*, 75 Mo. 138.

*Wash. Adams* for respondent.

(1) The petition does not show plaintiff was guilty of contributory negligence. At this stage no objection, that does not point out a total want of, or failure to state, a cause of action, is tolerated. A defective statement

is safe against such dilatory attack.  *Spurlock v. Rail-road,* 93 Mo. 530.   (2)  The demurrer to the evidence or instruction asked to that effect is equally devoid of merit.  The rule is established in this state that the introduction of testimony by the defendant waives a demurrer to the evidence.  *McPherson v. Railroad,* 10 S. W. Rep. 848.   But if this point is not waived it may be answered as follows:  *First.* It is not negligence *per se* to step off a moving street car.   *Wyatt v. Railroad,* 55 Mo. 485; *Fortune v. Railroad,* 10 Mo. App. 252; *Burns v. Railroad,* 50 Mo. 139.   *Second.* If it were this act was not the proximate cause of the injury.   The proximate cause of the injury was the striking of plaintiff by the approaching car after he had safely alighted.   It is not sufficient that plaintiff's negligence remotely contributed to promote the injury.   *Morrissey v. W. F. Co.,* 43 Mo. 384; *Muelhausen v. Railroad,* 91 Mo. 332 ; *Ashbrook v. Railroad,* 18 Mo. App. 290.   The evidence abundantly shows that plaintiff did look out the windows of the closed car he was in and failed to see and did not hear any approaching train.   Plaintiff was not bound to look and listen.   Being a passenger, he had a right to assume that defendant would do nothing to endanger him while in the act of alighting at a customary place.  *Railroad v. Robinson,* 127 Ill. 9; *Brassel v. Railroad,* 84 N. Y. 241; *Langan v. Railroad,* 72 Mo. 392.  Defendant having left its door open upon the north side of the car, at which plaintiff made his exit, and having suffered the same to be used continually by its passengers, it does not lie in its mouth to charge plaintiff with negligence for having gotten off on that side.   *Railroad v. Slattery,* L. R. 3 App. (Irish) 1156; *McGee v. Rail-road,* 92 Mo. 208.   (3)  Defendant's negligence caused the injury complained of.   It was proven beyond controversy, and, indeed, conceded by defendant at the trial, that its trains were running at a greater rate of speed than six miles per hour, in violation of the ordinance of the City of Kansas.   This is negligence *per se.*

*Karle v. Railroad*, 55 Mo. 476. (3) The only mode of ascertaining the cause of injury in such cases is to produce in evidence all the surrounding circumstances and let the jury judge. This was done in the case at bar. *Keim v. Railroad*, 90 Mo. 314; *Holman v. Railroad*, 62 Mo. 564. (4) The other act of negligence of which defendant was proven guilty, briefly stated, was that it allowed its train to pass a crossing, being an accustomed place for passengers to alight frequently from moving trains, without any signal or warning, in such manner as to endanger a passenger while making his exit from a train going in an opposite direction. *Tabler v. Railroad*, 93 Mo. 79; *Leslie v. Railroad*, 88 Mo. 50; *Petty v. Railroad*, 88 Mo. 306; *Keim v. Railroad*, 90 Mo. 314. (5) The exceptions saved respecting the ruling of the court in giving and refusing instructions were unavailing and insufficient. *Crosly v. Railroad*, 69 Me. 418; *Lincoln v. Claflin*, 7 Wall. 132; *Butler v. Coms.*, 37 Wis. 61. (6) The assignments of error in the motion for new trial are open to the same criticism. They are too general and indefinite. R. S., sec. 3557; *Rogers v. Rogers*, 46 Ind. 1; *Perringer v. Railroad*, 82 Mo. 196; 55 Cal. 277; 30 Ark. 420.

BLACK, J.—The plaintiff recovered a verdict for thirteen thousand and two hundred dollars, and on the suggestion of the trial court remitted a part and accepted a judgment for ten thousand dollars, to reverse which the defendant appealed. The defendant at the close of the plaintiff's evidence submitted a demurrer to the evidence, and asked a like instruction at the close of all of the evidence, both of which were refused. These instructions present the question whether the court should have taken the case from the jury.

The facts disclosed by the plaintiff's evidence are in substance these : The defendant's road runs east and west through the City of Kansas. The cars run east on the south and west on the north track; and when the

trains pass, there is a space of not more than eighteen inches between the cars. The cars going east stopped only at the east and those going west at the west sidewalk crossings; and then only when persons desired to get on or off.

The plaintiff, a young man about twenty years old, boarded an east-bound train composed of a coach and gripcar, intending to go to Holmes street. He took a seat on the north side of the gripcar near the rear end. Besides end doors this car had two side doors at the rear end, one opening out on the north and the other on the south side. These doors were open and there was no gate or other contrivance to prevent persons from going out on the north side.

Plaintiff testified that when he reached Holmes street he pulled a cord, which was attached to an air whistle, twice; that he heard no signal, and the cars did not stop; that he was looking out of the side windows of the car and then leaned over and looked out of the front end car door and did not see any train coming from the east on the north track; that he then got up, went to the rear end of the car, and then stepped out of the north door, and just as he got upon the ground a train going west on the north track hit him and knocked him down. His legs were thrown under the wheels of the cars upon which he had been riding. The bones were broken, but amputation was not necessary; he is a cripple for life. He stepped off at or within a few feet of the east crossing. He says the train going west was so close to him when he got off that he could not see it. The whistle attached to the cord was in the gripcar, and was out of order, so that it gave no signal. The plaintiff's seat in the car was within six or eight feet of the gripman, and the plaintiff did not notify the conductor or gripman where he desired to leave the car; he had been in the habit of going back and forth to and from his work by way of the defendant's road, and was familiar with the running of the cars. There were eight

trains on the road and each made ten or twelve daily trips. These trains were running at the rate of a fraction over seven miles per hour in violation of a city ordinance which limits the rate of speed to six miles per hour.

The evidence tends to show that it was the custom to ring the bells on both trains when and wherever they passed. The gripman of the train on which plaintiff took passage testified in positive terms that the bells on both trains were ringing at and before plaintiff stepped off. But the plaintiff testified in answer to the question whether he heard any bells : " I don't remember of one on the car I was on. I never heard the bell on the approaching car." Another witness for the plaintiff being asked if he was accustomed to hear signals said: " Yes, sir. On that occasion I cannot say whether I noticed any."

The defendant offered evidence to the effect that there were notices in the cars warning persons not to get off while the cars were in motion. The defendant offered other evidence, but as it does not aid the plaintiff's case it need not be recited.

The defendant in running its trains at a rate of speed prohibited by ordinance was guilty of negligence *per se. Keim v. Union Railway and Transit Co.*, 90 Mo. 314. Besides that there is some evidence, though it is very weak, to the effect that the gripman on the west-bound train did not, as was the custom, ring the bell of his car when passing the east-bound train upon which plaintiff was a passenger. We shall assume for all present purposes that this bell was not rung. It is argued for the defendant, that the speed of the train had no direct agency in causing the injury, but we cannot yield a consent to the proposition. There was sufficient evidence of negligence on the part of the defendant. The important question is whether the case should have been taken from the jury because of contributory negligence on the part of the plaintiff.

While carriers of passengers are held to a very high degree of care, there is a corresponding obligation on the part of the passenger to act with prudence, and if his negligent act contributes to bringing about the injury he cannot recover. Ordinarily, as has been said by this court on several occasions, contributory negligence is a question of fact for the jury; but the power and the duty of the court to direct a verdict in proper cases cannot be questioned. As has been said, if it appears, without any conflict of evidence, from the plaintiff's own case, or from the cross-examination of his witnesses, that he was guilty of negligence proximately contribu- ting to produce the injury, it would be the duty of the court to take the case from the jury. *Buesching v. Gaslight Co.*, 73 Mo. 219. A demurrer to the evidence must be sustained where an unavoidable inference of con- tributory negligence arises out of the plaintiff's own evi- dence, or out of other evidence which stands undisputed in the case. 2 Thomp. on Trials, sec. 1680. But where the undisputed facts relied on to establish contributory negligence are such as may, in the judgment of sensible men, lead to different conclusions as to whether they establish want of care, the question of negligence on the part of the plaintiff should be submitted to the jury. *Petty v. Railroad*, 88 Mo. 306.

The chief difficulty lies, not in the rule, but in its application; and here we may dispose of some prelim- inary questions. Much reliance is, by the plaintiff, placed upon the fact that the north door was open and without a gate or other guard to prevent persons from getting off on the north track. Though it was warm weather, the fact that the door was left open and unguarded might be regarded as an invitation to alight from that side when the car was employed in receiving and discharging passengers. But it was certainly no invita- tion for any one to jump off when the car was running at full speed. The very fact that the cars did not stop

or check up was a warning to the passengers not to get off. In *McGee v. Railroad*, 92 Mo. 218, the brakeman announced the station, and he and the conductor went out taking their lights with them, and in the meantime the train stopped at a dangerous place. These facts, it was held, could be construed in no other light than a direction for the passengers to alight. The facts of that case are unlike the facts in the case at bar, as will be readily seen. The fact that the door was open cannot and ought not to be construed as any invitation to alight while the train was at full speed.

It was in substance said in *Doss v. Railroad*, 59 Mo. 27, that to jump from a car propelled by steam, while in rapid motion, might be regarded as mere recklessness; but to step from a car at a platform while the motion of the car is slight may or may not be negligence and the question is one for the jury. These observations have been quoted or cited with approval in subsequent cases. 70 Mo. 604; 68 Mo. 594; 88 Mo. 52. To jump from a horse car while in rapid motion is not negligence *per se. Wyatt v. Railroad*, 55 Mo. 487. In that case there was evidence tending to show that the conductor ordered the boy to get off. Whether a party jumping or stepping from a moving car is guilty of negligence must, it is manifest, depend upon other circumstances than the speed of the cars, and these circumstances are so variant that general rules only can be stated. If the rate of speed is so high and the place of descent so obviously perilous that a person of ordinary prudence would not attempt to get off, then the act is contributory negligence and will bar a recovery. 2 Am. & Eng. Ency. Law, 763.

Again it is argued that the plaintiff was not bound to look out for the approaching car because, being a passenger, he had a right to assume that defendant would do nothing to put him in danger when alighting, and in that respect he stood on a different footing from

a footman crossing the track; and in support of this we are cited to *Chicago City R. R. Co. v. Robinson*, 127 Ill. 9; s. c., 36 Am. & Eng. R. R. Cas. 66.   In that case a boy six years old alighted from standing gripcars on which he had been a passenger, and was run over and killed when going over the sidewalk crossing at or near where he got off.   It was held that the fact that he did not stop and look to see whether a train was approaching was not, as a matter of law, and without any regard to the surrounding circumstances, negligence; but the question of his negligence was one for the jury.   If a failure to look for an approaching cable train in that case was evidence of negligence, then for much stronger reasons is the failure of the plaintiff in this case to look for an approaching train evidence of negligence.

Persons getting on and off of these cars are, while so doing, entitled to the protection due to passengers. The defendant is in duty bound to stop its cars and let them remain at rest long enough for persons to get on and alight with safety, and the servants in charge of an approaching train are in duty bound to govern their conduct accordingly.   But there is nothing in this case to show that defendant was required to stop its trains at crossings when no one desired to get on or off.   The train upon which plaintiff was a passenger, being in full motion, the servants on the approaching train would not suspect that he or any one else would be in the act of getting off.   We do not see that the plaintiff stands on any better footing than he would if he had jumped off at a place other than a crossing.

We have not said, nor do we now say, that the act of alighting when the car was in full motion, taken by itself, or the failure of the plaintiff to look for approaching cars when he reached the car door, taken by itself, or any other single circumstance in the case, would be, as a matter of law, negligence.   The undisputed evidence must be taken as a whole, and the conclusion

must be drawn from the circumstances as a whole. We are not at liberty to consider them singly and thus divide the case up into parcels.

It cannot be, and we believe it is not claimed, that the failure of the whistle to give an alarm afforded an excuse for leaving the car while in full motion.

Now it is clear that the plaintiff was in possession of his faculties, and was accustomed to these cars, and must have known that they passed every few minutes. He left his seat without signifying any desire to get off to the brakeman, who was in close proximity to him, and without any reason to believe the cars would come to a halt. When at the door of the car, he could have seen the approaching train by casting an eye east, for he then had an unobstructed view, but that he did not do so is clear. Under these circumstances, he stepped off while the cars were running at full speed, and was struck by the approaching cars as soon as he landed on the ground. With the other evidence resolved in favor of the plaintiff, and guided by what a prudent person would ordinarily do under such circumstances, it seems to us there can be but one conclusion, and that is, that the plaintiff was very negligent, to express the result in mild terms. The conclusion of negligence is a necessary and unavoidable result. One cannot thus voluntarily place life and limb in peril and claim to be free from fault. But for the plaintiff's negligence he would not have been injured. The court should have sustained the demurrer to the evidence.

The point made that the defendant waived the demurrer to the evidence by putting in its own evidence is not well taken. The demurrer was not only interposed at the close of the plaintiff's evidence, but a like request was made at the close of all the evidence. The defendant, by putting in its evidence, took the chance of aiding the plaintiff's case; but it was not thereby deprived of the right to ask the court to direct a verdict on all of the evidence.

We see no reason for remanding this cause, and the judgment is simply reversed. All concur. BARCLAY, J., concurs in reversing the judgment, but is of the opinion that the cause should be remanded.

### On Rehearing.

PER CURIAM.—So far as the merits of this case are concerned, we deem it unnecessary to add anything to the opinion heretofore filed.

A complaint is made that the court did not give full consideration to the point made in the respondent's brief that exceptions were not properly saved, by appellant, to the action of the circuit court in refusing certain instructions, among which was one to the effect that, upon the pleadings and evidence, the plaintiff could not recover. This instruction is numbered 10, and is one of thirteen asked by defendant, but refused by the court. In respect of these refused instructions, the bill of exceptions says: "And said instructions, numbers 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21 and 22, as asked, the court refused, to which refusal of the instructions thus asked, the defendant, by its counsel, then and there excepted at the time."

The argument is that there is here but a general exception to the refused instructions as a whole, and, if any one instruction was properly refused, the exception must fail. Authorities are cited from other states, which favor the position taken by the respondent, but such is not, and never has been, the rule of practice in this state. Under our code of civil procedure, either party may, after the close of the evidence, move the court to give instructions which are usually prepared by counsel and must be in writing, and the practice is to number them, as was done in the present case. The refused instructions must be set out in the bill of exceptions, and a formula often used for saving the

exceptions is "which instructions the court refused, to which refusal of the instructions thus prayed, the defendant, by his counsel, then and there excepted at the time." Whittlesey's Prac. 482. Such an exception entitles the party to have each refused instruction considered in this court. Whatever may be the ruling of other courts, we must follow the rule which has heretofore prevailed in this court, and we see no reason to depart from it if we were at liberty to do so. This form of saving exceptions is quite as well understood as if the objector had said he excepted to the action of the court in refusing to give said instructions and each of them. There is nothing in *Harrison v. Bartlett*, 51 Mo. 170, or *City of St. Joseph v. Ensworth*, 65 Mo. 628, which conflicts with what has been said in this case.

One of the grounds assigned for a new trial was "because the court erred in refusing to give instructions numbers 10 to 22 inclusive, asked by the defendant." This was sufficient.

Again, counsel for the respondent are in error in supposing that the defendant waived its objection to the action of the court in overruling the demurrer to plaintiff's evidence by putting in its own evidence. When such a demurrer is made and overruled and the defendant puts in its evidence, this court, in reviewing the ruling, will do so in the light of all of the evidence. If, upon all the evidence, no matter by whom, or when, offered, there is a case to go to the jury, we do not reverse, though the demurrer to the plaintiff's evidence should have been given, as the case stood when it was interposed.

With these qualifications, the demurrer to the plaintiff's evidence will be considered here, though the defendant should offer evidence after it is overruled. *McPherson v. Railroad*, 97 Mo. 254.

The motion for rehearing is overruled.