# EIKENBERRY, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

### St. Louis Court of Appeals, January 19, 1904.

1. **CARRIERS OF PASSENGERS: Boarding Moving Car: Instructions.** In an action against a street railway company for injuries incurred by plaintiff while attempting to board one of defendant's cars, where the evidence shows that the car had slowed down to four or five miles an hour and, when plaintiff was attempting to get on, the speed was suddenly increased, whereby he was thrown to the ground and incurred the injuries complained of, the instructions for plaintiff are set out at length and held to properly declare the law of the case.

2. **INSTRUCTION: Striking Out Portion.** It is not error to strike out a portion of an instruction which states a correct proposition of law, where the remainder of such instruction fairly submits the issue to the jury and the party complaining is not prejudiced by the striking out.

3. **———: Credibility of Witnesses.** An instruction in the usual form in respect to the credibility of witnesses does not contain a reversible error on account of authorizing the witnesses to take into consideration all they had "seen and heard at the trial;" such an instruction is open to criticism as too broad, though it is improbable that it induced the jury to take into consideration things heard and seen at the trial, outside of the evidence and independent of the witnesses.

4. **CARRIER OF PASSENGERS: Contributory Negligence: Boarding Moving Car.** It is not negligence *per se* for a man of ordinary activity, thirty-eight years of age, to attempt to board a street car while turning a curve at the rate of five or six miles per hour.

5. **———: ———: ———.** And in a suit for injuries received by plaintiff in such a case, where the evidence tends to show that the plaintiff was thrown from the car by the sudden increase of speed wh'ch caused him to lose his balance, although he may have been negligent in attempting to board the car under the circumstances, if the proximate cause of his fall was due to the sudden increase of speed, the defendant company is liable.

6. ——: ——: ——: **Instructions.** Nor was . it error to refuse an instruction asked by the defendant to the effect that if plaintiff was thrown from the car by the side or lateral motion of the car, while passing around the curve, and not by the increase of speed, the verdict should be for the defendant, where the evidence does not tend to prove that the plaintiff was thrown from the car solely by its lateral motion, but shows that plaintiff, having attempted to board the car while it was moving, lost his balance by the sudden increase of speed, and, after being carried from 60 to 75 feet, was thrown into the street.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough,* Judge.

AFFIRMED.

*Crawley & Jamison, Boyle, Priest & Lehmann* and *George W. Easley* for appellant.

*A. R. Taylor* and *M. D. Mugan* for respondent.

STATEMENT.

Garrison avenue, in the city of St. Louis, runs north and south. Dickson street runs east and west and crosses Garrison avenue. There is a street railway in both streets and a curve in their intersection on which cars travelling south on Garrison avenue may turn east into Dickson street. The curve begins at the northern intersection of the two streets and ends about where the east line of Garrison avenue would be, if continued across Dickson street. There is a crossing from Dickson street near this line and about fifteen feet east of it is, a flag-stone crossing. The plaintiff resided near the crossing of Dickson street and had for about two years prior to his injury, almost daily boarded one of defendant's cars coming south on Garrison avenue and turning east into Dickson street at or near the southeast corner of Dickson street and Garrison avenue. On January 21, 1901, at about 6:30 p. m., in company with H. T. Crist,

plaintiff went from his residence, No. 3003A Dickson street, to the southeast corner of Garrison avenue and Dickson street with the intention of taking a down town car running east on Dickson street.

Plaintiff testified that he took his stand at the southeast corner of Garrison avenue and Dickson street and in a few minutes a car approached travelling south on Garrison avenue; that when it first entered the curve, he signalled the motorman of his desire to become a passenger by raising his left hand, in which he held a book, and as the front of the car came opposite him, he gave a like signal; that the car slowed down as it came into the curve and continued to slow down until the rear platform was opposite him and was then moving very slowly and he thought it was going to come to a standstill; that he took hold of the handrail with his right hand and stepped up on the first step with his left foot, when the car suddenly started up with an accelerated speed and shock, which threw him around against the car; that he tried to regain his foothold but was unable to do so and was carried sixty or seventy feet when his handhold gave away and he fell or was thrown into the street and injured severely and permanently. In respect to the occurrence, plaintiff was corroborated in every particular by the evidence of his companion, Crist, and as to the main facts by William L. McClaskey, who was near by.

Plaintiff and his witnesses estimated the speed of the car at the time he undertook to get on it at about two miles an hour and plaintiff testified that he and others were in the habit of getting on the cars at the southeast corner of Garrison avenue and Dickson street while the same was slowly moving and that that point was the usual stopping place for the purpose of permitting passengers to get on and off the cars, and he had seen cars stop at that point to permit ladies to get on.

The motorman in charge of the car testified that he was running from ten to twelve miles an hour before he reached the curve; that as he approached the curve, in

obedience to the orders of the defendant company and to prevent breaking a wheel or causing the car to jump the track, he shut off the power and slowed down the speed to about four or five miles per hour and continued at that speed until the car was passing out of the curve, when he turned on the power and resumed the speed that he had been travelling before entering the curve; that he never stopped a car in a curve to let passengers on or off and that the southeast corner of Garrison avenue and Dickson street was in a curve, and he had never stopped there to let passengers on or off, but stopped at the flagstone crossing fifteen feet east, the usual and proper place to stop to let passengers on and off the cars. The ductor testified to substantially the same facts and three or four witnesses for the defendant, who were on the car as passengers, testified that the speed of the car when plaintiff attempted to get aboard, was from four to six miles per hour.

Witnesses, experienced in running street cars and railroad trains, testified that the natural effect of the motion of a car passing around a curve like the one at Garrison avenue and Dickson street would give the car a lateral motion, the first tendency of which would be to throw one standing on the step or platform, in toward the car and as it went out of the curve, to throw him from the car. Other witnesses who travelled on this line testified that their experience when on the platform of the car was as described by the experts.

The jury found the issues for the plaintiff and assessed his damages at $3,500. After an unavailing motion for new trial, defendant appealed.

For the plaintiff the court gave the following instructions:

"1. The court instructs the jury, that if they find from the evidence in this case that on the twenty-first day of January, 1901, the defendant was operating the car mentioned in the evidence for the purpose of carrying passengers for hire; and if the jury further find from

the evidence that on said day the plaintiff at the crossing of Dickson street and Garrison avenue in the city of St. Louis, signalled the motorman of said car of his intention to become a passenger on said car at said place; and if the jury further find from the evidence that said place was where the defendant received passengers on its east-bound car; and if the jury further believe from the evidence that defendant's said motorman, on said car, in obedience to said signal slowed said car down approaching and at said place to enable the plaintiff to get upon said car as a passenger and that the plaintiff, whilst said car was so slowed down for said purpose attempted to get upon said car as a passenger; then it was the duty of defendant's motorman in charge of said car, to use a high degree of care; such as would be exercised by a skillful and careful motorman under like circumstances, to so control and manage said car, as to enable the plaintiff to safely get upon said car and reach a place of safety as a passenger.

"2.  If the jury believe from the evidence in this case that on the twenty-first day of January, 1901, the defendant was operating the car mentioned in the evidence for the purpose of carrying passengers for hire from one point to another in the city of St. Louis, by street railway, and if the jury further find from the evidence in this case that on the twenty-first day of January, 1901, the plaintiff was on the east crossing of Garrison avenue and Dickson street in the city of St. Louis, intending to become a passenger upon defendant's east-bound car at said place, and said place was where the defendant received passengers on its east-bound car, and if the jury further find from the evidence that whilst so at said crossing the plaintiff signalled defendant's motorman in charge of its east bound car, approaching said point, of his intention to become a passenger upon said car, at said place; and if the jury further find from the evidence that said motorman in obedience to said signal, slowed said car down as it approached said crossing

for the purpose of receiving the plaintiff as a passenger on said car, while it was so slowed down and moving slowly at said crossing; and if you further find from the evidence in this case that after said car was so slowed down it was so moving slowly at said crossing and while so moving slowly the plaintiff stepped upon the step of the rear platform of said car, for the purpose of becoming a passenger on said car; and that whilst the plaintiff was so getting upon said car and before he had reasonable time or opportunity to get upon said car as a passenger, defendant's motorman in charge of said car caused or suffered said car to suddenly go forward with increased speed and shock and that thereby the plaintiff was caused to be thrown and fall from said car and sustain injuries, and if the jury believe from the evidence that the defendant's motorman so in charge of said car, while plaintiff was in the act of getting on the car, failed to exercise such high degree of care as would be exercised by a skillful and careful motorman under the same or similar circumstances and thereby directly caused said movement of said car and plaintiff's injuries; and if the jury find from the evidence that the plaintiff was exercising ordinary care at the time in so getting upon said car and whilst on said car, then the plaintiff is entitled to recover.''

The court also gave an instruction for plaintiff defining ordinary care, which was in the usual form, and one on the measure of damages to which no objections were made.

Of its own motion the court gave the following instruction:

''2. You are instructed that the jury are the sole judges of the credibility of the several witnesses that have appeared before you, and of the weight or importance to be given to their respective statements of testimony; and if you believe from all that you have seen and heard at the trial, that any witness has willfully sworn falsely as to any of the facts mentioned in the

instruction herein, as bearing on the plaintiff's alleged claim or defendant's alleged defenses thereto then you are at liberty to disregard entirely the testimony of said witness.''

For defendant appropriate instructions were given in respect to contributory negligence and one to the effect that plaintiff was not a passenger if he was not seen by the motorman and if not a passenger, then the defendant owed him no duty and he could not recover.

Defendant asked the following instruction, which the court modified by striking out the italicized words and giving the instruction as modified:

''8. . If the jury find from the evidence that the car was slowed down while passing around the curve leading from Garrison avenue to Dickson street, for the purpose of making it safe in getting around said curve, and that such slowing down was not done for the purpose of enabling the plaintiff to get upon the car, *then such slowing down of the car was not an invitation to plaintiff to attempt to get upon the same,* and if the motorman did not know, and had no reasonable cause to think, that the plaintiff was attempting to get on said car, while it was in motion, then it was not negligent or improper in the motorman to accelerate the motion of said car when leaving said curve, and such facts, if you find them to be true from the evidence, do not authorize the plaintiff to recover.''

The court refused the following instruction asked by defendant:

''1.    If you find from the evidence that defendant's car was moving around a curve in the track, upon which it was running, at a speed of from five to six miles per hour, and that while so moving plaintiff attempted to get upon and board the same, and that he was at said time holding in his left hand a book, then the court instructs you, as a matter of law, that plaintiff was guilty of contributory negligence and can not recover in this action.''

BLAND, P. J. (after stating the facts as above.) —
1. The instructions given for the plaintiff find support
in the evidence offered by him and as applied to that
evidence correctly enunciate the law and are not open
to the criticism made by defendant's counsel in their
brief and are not opposed to any of the decisions cited
in support of the criticisms. These decisions were ren-
dered on a state of facts materially different from those
shown by the plaintiff's evidence.

2. Instruction No. 8, asked by defendant, was a
correct exposition of the law and should have been given
without modification, but we can not conceive how de-
fendant was prejudiced by the striking out of the clause,
"then such slowing down of the car was not an invita-
tion to plaintiff to attempt to get upon the same." The
defense to which the instruction is applicable was that
the motorman did not see the plaintiff and had no knowl-
edge of his presence or of his intention to get on the
car and for this reason owed him no duty to stop or
slow down the car to enable him to get on it. The in-
struction as given fairly submitted this defense to the
jury. The clause stricken out, though correct as a legal
proposition, would have added no strength to the in-
struction had it remained in it, nor afforded the jury
any information necessary to a correct verdict in the
case, other than what they gained from the instruction
as given.

3. The instruction given by the court of its own
motion, in respect to the credibility of witnesses, is
cirticised for the reason it authorized the jury in passing
on the credibility of the witnesses to take into consid-
eration all they had "seen and heard at the trial." The
contention is that the instruction authorized the jury
to take into consideration everything that came within
their observation at the trial. In Hansberger v. Rail-
way, 82 Mo. App. l. c. 577, the Kansas City Court of
Appeals said of an instruction on the credibility of wit-

nesses containing the same objectionable phrases as the one in hand, that it was open to the criticism made by appellant's counsel, that it was too broad. The judgment, however, was not reversed on account of the objectionable instruction but for other errors that intervened at the trial. In Kirchner v. Collins, 152 Mo. 394, the Supreme Court passed an instruction containing the identical phrase without condemnation. We agree with the Kansas City Court of Appeals that the instruction is open to criticism and is too broad. But we do not think the judgment should be reversed on account of this objectionable instruction, for it can not be thought that the jury when it came to pass on the credibility of any of the witnesses in the case felt itself authorized by the instruction to put aside the oath that had been administered to it, and take into consideration things heard and seen at the trial outside of the evidence and independent of the witnesses. It is more probable, and the presumption is, that the jury remembered their oath and construed the instruction as it should have been construed and felt themselves confined to the evidence and to the demeanor of the witnesses while testifying. We do not think the jury were misled by the instruction and decline to reverse the judgment on account of it.

4.    Should the court have given the first instruction asked by defendant? In other words, is it contributory negligence, as a matter of law, for an ordinarily active man, thirty-eight years of age, to attempt to board a street car turning out of a curve at the rate of five or six miles per hour, provided the place where he undertakes to get on is the usual place where the car stops for the purpose of letting passengers on and off, and he is familiar with such place? Five or six miles per hour is the highest estimate of the speed of the car, while it was passing around the curve, by any witness who testified in the case. Four or five miles an hour was the estimate of not only the majority of the defendant's witnesses, but of those most competent to

judge of its speed.   But defendant was entitled to select
the highest estimate of speed made by any of its wit-
nesses and to submit the question of negligence *per se*
on that speed.

In Harvey v. Railroad, 116 Mass. 269, it was held
a bar to recovery for a person to get aboard a train
at a station after it began to move.   The same ruling
was made in New York, etc., Railroad v. Enches, 127
Pa. St. 316.   In Birmingham Electric Railway Co. v.
Clay, 108 Ala. 233, it was held contributory negligence
for one with his arms full of bundles to attempt to board
an electric car while it was running from four to five
miles per hour.   Beach on Contributory Negligence,
says: ''A railroad company is not liable for the con-
sequences of an attempt to get upon a train in motion.''
(3 Ed., sec. 146).

In Swigert v. Railroad, 75 Mo. 475, it was held:
''It is not necessarily negligence to attempt to get on a
train which has started from a station.''

In Fulks v. Railroad, 111 Mo. l. c. 340, it is said:
''To attempt to get on or off a train in rapid motion
would be an act of gross negligence; but it is generally
held that the courts will not, as a matter of law, declare
a person guilty of contributory negligence who attempts
to get on or off a train while it is moving slowly, especi-
ally at a platform.   The question of contributory neg-
ligence in such cases is one of mixed law and fact, and
should be determined by the jury, under the guide of
proper instructions, in the light of all the attending cir-
cumstances.   Such has been the repeated ruling of this
and other courts.   Doss v. Railroad, 59 Mo. 27; Swigert
v. Railroad, 75 Mo. 475; Leslie v. Railroad, 88 Mo. 51;
Clotworthy v. Railroad, 80 Mo. 221; Straus v. Railroad,
75 Mo. 185; Weber v. Railroad, 100 Mo. 194; Filer v.
Railroad, 49 N. Y. 47; Bucher v. Railroad, 98 N. Y. 128;
Johnson v. Railroad, 70 Pa. St. 357.''

In Murphy v. Railway, 43 Mo. App. l. c. 349, this

court said: "We are not prepared to say, as a matter of law, that the plaintiff was guilty of contributory negligence in attempting to get on the train, if, in point of fact, it was running no faster than a man could walk, and he was invited to do so by the conductor."

When the rate of speed is so high and the place where the plaintiff attempts to get on or off a moving car is so obviously perilous that a person of ordinary prudence would not make the attempt, the trial court should nonsuit the plaintiff. Weber v. Railroad, 100 Mo. 194. It should be conceded that there is more or less risk in getting on or off a moving car or train of cars, which risk the person making the attempt assumes, and that this risk increases with the increased speed of the car or train of cars. But every risk one voluntarily takes in his movements from place to place is not negligence *per se* and does not become so unless the peril is so obvious that a person of ordinary prudence would not assume it. The best considered cases have refused to lay down a rule as to what particular speed would be sufficient notice to one, if he attempted to get on or off a moving car, that he would be guilty of contributory negligence. Cicero & Proviso Street Railway Co. v. Meixner, 31 L. R. A. (160 Ill. 320) 331; Brown v. Seattle City R. R. Co., 16 Wash. 465; Morrison v. Railroad, 130 N. Y. 166; Omaha Street Railway Co. v. Craig, 39 Neb. 601; Sahlgaard v. Railway, 48 Minn. 232; Finkeldey v. Omnibus Cable Co., 114 Cal. 28; Ober v. Railroad, 44 La. Ann. 1059; The Citizens' Street Railroad Co. v. Spahr, 7 Ind. App. 23. But even if it should be conceded that plaintiff was guilty of contributory negligence in trying to get on the moving car, the instruction should not have been given, for the reason that it ignored and left out of view the evidence of plaintiff tending to show that while he was attempting to board the car and had his left foot on the lower step and had hold of the handrail with his right hand, the motorman increased the speed of the car causing plaintiff to lose

his balance. If this increase of speed—as the evidence tends to show—and not plaintiff's prior negligence, caused him to lose his balance and fall into the street, the defendant company is liable. The risk assumed by the plaintiff in getting on the moving car was only the risk of injury from the ordinary movements of the car in similar circumstances and it was gross negligence in the motorman, if he knew or had good reason to believe, as the evidence tends to establish he did, that the plaintiff was attempting to board the car, to accelerate its speed, and if his negligence in so accelerating the speed was the proximate cause of the injury, then it is plain that the plaintiff's prior negligence would not bar a recovery. Schepers v. Railway Co., 126 Mo. l. c. 676, and cases cited.

The defendant asked the following other instruction which the court refused:

"If the jury find from the evidence that the plaintiff was thrown from the car by reason of a side or lateral motion of the car, caused by the car passing out of the curve on to the straight track, and not by reason of a start forward with a sudden increased speed, causing a shock, then the plaintiff can not recover under the pleadings in this cause, and the verdict of the jury must be for the defendant."

As before stated there was evidence of the side motion of the car and of its first tendency to throw one standing on the platform in toward the car; as it went out of the curve to throw him outwardly from the car. The car was moving out of the curve when the plaintiff attempted to get on it. His evidence is that after he had one foot on the step and had hold of the handrail, the car started with a sudden increase of speed and he lost his balance and after being carried from sixty to seventy-five feet he fell into the street; that the car was moving about three miles per hour when he attempted to get on it. This evidence, and there is none to contradict it, does not prove or tend to prove that the plain-

tiff was thrown from the car solely by its lateral motion in going out of the curve and the instruction for this, and other reasons herein stated, was rightfully denied.

The other instructions asked by defendant and re-fused were either covered by instructions given or they misstated the law and were, therefore, correctly refused.

Discovering no reversible error in the record, the judgment is affirmed. *Reyburn,* and *Goode, JJ.,* concur.