## J. C. Huchingson v. Texas Central Railroad Company.

### Decided April 14, 1909.

**Railway—Negligence—Person Assisting Passenger.**

One entering a passenger train for the purpose of assisting a female relative on board was entitled to reasonable care from the railway with respect to opportunity for alighting, though he gave no notice that he intended to get off and not to take passage. When it was shown that it was customary for friends to render such assistance in getting on the train, that the train stopped less than the usual time, started before plaintiff could alight and immediately after notice that it was about to do so, and that plaintiff was injured in attempting to alight by falling over a footstool or step in the path of his exit, the question of defendant's negligence and plaintiff's contributory negligence should have been left to the jury, and a peremptory instruction to find for defendant was unwarranted.

Appeal from the District Court of Hamilton County. Tried below before Hon. N. R. Lindsey.

*Langford & Chesley,* for appellant.—One placing an aged, infirm female relative on the train of a common carrier, at a time and place fixed by the carrier for the reception of passengers, is not a mere trespasser, but is, at least, a licensee, and as such is entitled to ordinary care at the hands of the servants of the carrier. Missouri, K. & T. Ry. Co. v. Miller, 8 Texas Civ. App., 241; Hamilton v. Texas & P. Ry. Co., 64 Texas, 251; Texas & P. Ry. Co. v. Best, 66 Texas, 116; Cherokee Packet Co. v. Hilson, 31 S. W., 737; Doss v. Missouri, K. & T. R. R. Co., 59 Mo., 38; Louisville & N. R. Co. v. Crump, 119

Ind., 542; McKone v. Michigan Cent. Ry. Co., 51 Mich., 601; 2 Hutchinson on Carriers, sec. 991; 3 Thompson on Negligence, sec. 2658.

*J. A. Kibler* and *A. R. Eidson,* for appellee.—The court did not err in directing a verdict for appellee, because the appellant's evidence shows that his injuries were directly and proximately caused by his own negligence. Houston & T. C. Ry. Co. v. Leslie, 57 Texas, 85-86; Ratteree v. Galveston, H. & S. A. Railway, 36 Texas Civ. App., 197.

One not a passenger entering a railroad coach intending to disembark, the railroad company, having no knowledge or notice actual or constructive of his purpose and intention, is not required to hold its train for him to disembark, and owes him no duty except not to injure him after his peril is discovered, and the court, therefore, did not err in directing a verdict for the appellee.  International & G. N. Ry. Co. v. Satterwhite, 15 Texas Civ. App., 102; Missouri, K. & T. Railway v. Miller, 8 Texas Civ. App., 241; Texas & P. Railway v. Funderburk, 30 Texas Civ. App., 22; Gist v. International & G. N. Ry. Co., 102 S. W., 457; Little Rock & Ft. S. Railway Co. v. Lawton, 18 S. W., 543; Note of Annotator, 15 L. R. A., 434.

RICE, ASSOCIATE JUSTICE.—About four o'clock on the morning of March 24, 1907, plaintiff, who lived in the town of Hico, accompanied his sick and aged sister, who had been his guest, to the depot in said town for the purpose of assisting her aboard the cars of appellee. Upon the arrival of the train, having previously purchased his sister's ticket, he immediately took her aboard, passing the conductor at the steps, and having found a seat about half way of the car he deposited her grip, which he was carrying, and bidding her a hurried adieu, undertook to disembark, but just as he was proceeding to do so, the conductor halloaed, "All aboard," whereupon the train began to move, and as he was endeavoring to step from the moving car his foot struck a footstool, which had been left on the car platform, or on the first step, causing him to lose his balance, stumble and fall to the ground, thereby breaking the thigh-bone of his leg and otherwise seriously bruising and injuring him, from the effects of which he suffered intensely for several months, and on account of which he brought this action to recover damages, alleging negligence on the part of the company: First, in that it did not stop its train for the length of time necessary to transact its business, nor for the usual and customary length of time at said station; second, in negligently leaving a foot-stool or other obstruction in the path of exit from said coach; third, in the negligent act of its conductor in giving the warning cry, "All aboard," and immediately thereafter starting the train, without giving time for persons intending to disembark therefrom to do so. And in this connection he also averred that it was a custom, long known to and acquiesced in by the company at said station, for gentlemen to assist their lady friends and relatives aboard its trains.

Defendant replied by general demurrer, special exceptions, general denial, and specially answered that appellant did not notify it or its servants of his intention to disembark from said train after assisting

his sister thereon, nor had they any knowledge of said intention on his part. Also by plea of contributory negligence in jumping from said train while the same was in motion, and also jumping therefrom in contravention of an ordinance of said town prohibiting persons from so doing.

After hearing the evidence the trial court instructed a verdict for the defendant, on the ground that the evidence failed to show any negligence on the part of the company, from which judgment this appeal is prosecuted.

The evidence sustained the allegations of the petition, and in addition thereto showed that the usual time for stopping trains at said station was from three to five minutes; whereas, on this occasion said train only stopped from one to one and one-half minutes; that it was the custom, and had been for many years at said place, for friends and relatives of lady passengers to enter trains at that point, to assist them on and off the cars. That after the announcement of "All aboard" the cars started at once, without giving time for one to alight; that appellant was leaving the cars and near the door at the time of said anouncement of "All aboard;" that at the time he started to step from the train that the same was moving very slowly, the evidence showing that the point on the ground where the appellant fell was only forty-four feet from the place he entered the cars, and less than a car length therefrom. The evidence further discloses that he could have safely disembarked but for the fact that he stumbled against the stool which had been left upon the platform or first step of the car; and that while he was sixty-nine years of age, that he was vigorous and active and had been much accustomed to getting off and on moving trains. It was also shown that his sister, who had been his guest, was departing for Galveston in quest of medical aid; that she was then and had been sick and her eyesight was bad; that she was fifty-three years of age and was suffering intensely at the time from an attack of neuralgia, and was unable, without assistance, to have boarded said train, whereby it was necessary for someone to assist her in doing so.

In volume 2, Hutchinson on Carriers, 3d edition, section 991, it is said: "A person who comes to a railroad station to assist passengers in entering or leaving the train, though not a passenger, is not a trespasser, as he comes with at least the tacit invitation of the carrier. While so engaged, he does not stand in the relation to the carrier of a bare licensee, but is deemed to have been invited to be there by virtue of the relation existing between the carrier and the intending or arriving passenger. The carrier, therefore, owes to him the duty of exercising at least ordinary care to see he is not injured by reason of defective stational facilities or approaches thereto. So one who goes upon a train to render necessary assistance to a passenger, in conformity with a practice approved or acquiesced in by the carrier, has a right to render the needed assistance and leave the train; and the carrier, in permitting him to enter with knowledge of his purpose, is presumed to agree that he may execute it, and is bound to hold the train a reasonable time therefor. If he is injured by reason of the sudden starting of the train, or the omission to give the customary signals, the carrier will be liable. But the duty of the carrier in this

respect is dependent upon the knowledge of such person's purpose by those in charge of the train, for without such knowledge they may reasonably conclude that he entered to become a passenger, and cause the train to be moved after giving him a reasonable time to get aboard. He should, accordingly, notify someone in the management of the train of his presence, business or purpose, so as to create some relation to the carrier, and thus make it its duty to care for him. And where the carrier's servants have no knowledge, or there are no circumstances tending to put them on notice that a person who has boarded a train to assist another intends to alight before the train starts, they are not bound to hold the train until he has had time to disembark, nor to notify him before the train is started."

In volume 3, Thompson's Commentaries on the Law of Negligence, section 2658, it is said: "A person going upon a railway train to assist another person on or off, is clearly not a passenger, and is therefore not entitled to the high and exact degree of care for his safety which the law imposes upon a common carrier in respect of his passenger. He is *either a licensee or a trespasser,* depending upon the known rules of the company or the circumstances of the particular case. If, for instance, he is there in conformity with a practice approved or acquiesced in by the carrier, he is to be deemed lawfully there; his position is that of a licensee; and, under a principle hereafter considered, the carrier, if he have notice of his presence on his vehicle, owes him the duty of ordinary or reasonable care. In such a case he is entitled to a reasonable time for rendering the necessary assistance to the passenger to leave the vehicle of the carrier, provided the servants of the carrier have notice of his purpose to leave; and if he is injured without negligence on his own part, in consequence of not being allowed such reasonable time to alight, he may recover damages from the carrier. It is a part of this doctrine that the company must be notified, through its servants, of an intention of the person so entering its vehicle to assist a passenger to get off the train, if the usual time for stopping is not sufficient to enable him to render such assistance and get off in safety. It must be kept in mind that the conductor and trainmen will not, ordinarily, know who, among those who get upon the train, are passengers, and who are there merely to assist passengers; hence it is a sound and just conclusion that, in the absence of notice of his intention to leave the train after assisting a passenger into the car, the company will not be chargeable with negligence because of not stopping the train for more than the usual and reasonable time, to enable passengers exercising ordinary care to get on and off in safety; but where such person gives notice to a trainman of his purpose to get off, those in charge of the train are bound to so regulate its movements as to afford him a reasonable time to alight in safety. . . . But if the carrier's servants have no notice of his purpose to get off, he can not, in case he is hurt in getting off, in consequence of the starting of the carrier's vehicle, recover damages from the carrier, unless there are some other circumstances of negligence on the part of the carrier's servants."

The above seems to be the general doctrine on the subject, and most of the cases in which the question has arisen have turned upon the

fact that no notice was given by the accompanying party at the time of entering the train of his purpose to assist the passenger and then retire from the train. There are cases, however, to the effect that if the circumstances, within themselves, are sufficient to give notice to the trainmen that the accompanying party is intending to disembark, then it is the duty of the company to afford ample time for him to do so.

In a Texas case it was held that where a party had accompanied two ladies to the station in the early morning, having left one of them at or near the station platform while he accompanied the other upon the cars to assist her in finding a seat, that this of itself was sufficient notice to the company that he intended to disembark from the train, as it could not be presumed that he intended to leave the remaining lady alone at the station at such an hour. International & G. N. R. Co. v. Satterwhite, 19 Texas Civ. App., 170.

Numerous cases sustain the doctrine that parties who go upon the premises of railway companies "to welcome the coming or speed the parting guest," are not trespassers, but are licensees, and that the company owes them at least the duty of ordinary care to see that they are not injured while there for such purpose.

In Missouri, K. & T. Ry. Co. v. Miller, 8 Texas Civ. App., 241, a case in which a man had gone upon the train to assist his wife aboard, and who was injured while disembarking therefrom, the court said: "To such persons it owes the duty of providing reasonably safe platforms and approaches to its trains. (Hamilton v. Texas & P. Ry. Co., 64 Texas, 251; Texas & P. Ry. Co. v. Best, 66 Texas, 116.) The relations sustained between the railway company and appellee do not arise out of contract, and the obligations are not such as are imposed by contract. Appellee did not go into the train as a passenger, and hence the duties imposed by law upon carriers to passengers did not rest upon the company and govern its conduct towards him. He went upon the train under an implied permission or license, and the company owed him the duty of ordinary care. (Lucas v. New Bedford & T. Ry. Co., 6 Gray, 64.) The company was under obligations to passengers to stop the train a sufficient length of time for those desiring to get off, and those desiring to take passage to do so with safety. It was the duty of appellee to take notice of the usual length of time given for this purpose, and if it was not sufficient, and it was necessary for him to go into the train, in order to place upon the company the duty of holding the train specially for him to disembark, he must have given notice of his intention." This case to us seems to imply that if the usual time for stopping trains would have been sufficient for the accompanying party to have assisted his wife thereon and then safely alighted from the train, that it would not have been necessary for him to have notified the company or its agents of his purpose in entering, but that this would only be necessary where the stop was not sufficient for the purpose indicated. The same doctrine is stated in Texas & Pacific Ry. Co. v. McGilvary, 29 S. W., 67.

In the case of Missouri, K. & T. Ry. Co. v. Miller, 15 Texas Civ. App., 428, where a man who had accompanied his wife on board a train was injured while attempting to get off, among other things, the

court said: "We think also that it was not essential, in order to entail on the defendant the duty to so handle the train as to allow reasonable facility for the plaintiff to get off without harm to himself, that the conductor be first seen and his permission obtained for plaintiff to go upon the train to see his wife seated. The company unquestionably had power, as a reasonable regulation of its business, to keep the husband from the train, or to prevent him from entering, he not being a passenger, but if, in the absence of any measures to that end, it allows persons who are not passengers to approach and board its train for the purpose of assisting its passengers to a seat, its consent thereto is as much obtained as if it was expressly given."

In the case of Little Rock & Ft. Smith Ry. v. Lawton, 15 L. R. A., 434, et seq., being a case where the plaintiff had entered defendant's car for the purpose of assisting a lady and child to a seat, Justice Hemmingway, after discussing the contention of the Railway Company that as the plaintiff did not enter the car to take passage upon it, but only as an escort to a passenger, the defendant owed him no duty, except not to injure him wilfully and wantonly, and the other contention by the plaintiff to the effect that as he went upon the car with the knowledge of the trainmen and for the purpose of rendering necessary assistance to a female passenger and child, the defendant owed him the same duty as a passenger, said:

"We have concluded that neither view is correct, but that reason commends as proper a rule between the two. In the case of Louisville & N. R. Co. v. Crunk, 119 Ind., 542, the Supreme Court of Indiana held that a railroad company owed the same duty to those assisting a passenger upon a train as to the passenger himself; but it cites no precedent for the ruling, and it is opposed to all cases adjudged upon the subject to which our attention has been called. The law exacts of railroads for the protection of passengers the highest degree of care and imposes a liability for all injuries which sound judgment, skill and the most vigilant oversight could have prevented; but this responsibility grows out of the relation of contract of carrier and passenger, on account of the great perils of the undertaking. As this is the cause and the origin of the rule, it would seem that the rule should be restricted in its application to persons who come within that relation, and such is the effect of the authorities." Citing many cases. Proceeding, the court says:

"But a denial that the extreme responsibility contended for exists is not an affirmance of the rule that responsibility is restricted to wrongs that are wilful or wanton. Such conclusion would rest upon the premise that one attending a passenger enters the car from curiosity or upon his own business, under a mere license from the company, and not upon business connected with the company upon an implied invitation. If this premise be false and the converse correct, then according to the decision of this and other courts the carrier would be bound to the exercise of ordinary care (St. Louis, I. M. & S. Ry. v. Fairbairn, 48 Ark., 491; Holmes v. Northeastern R. Co., L. R., 4 Exch., 254). And that it is so bound in cases like this is held in the cases first cited, as well as in others upon the subject. (Gillis v. Pennsylvania R. Co., 59 Pa., 129, 98 Am. Dec., 317; Griswold v. Chi-

cago N. W. R. Co., 26 N. W., 101.) In our opinion the rule is correct upon principle, for it is a matter of common knowledge that in the usual conduct of the passenger business it often becomes necessary for those not passengers to go upon the cars to assist incoming as well as outgoing passengers, and that a practice has grown up in response to this necessity. While it perhaps arose out of a consideration for the security and convenience of the traveler, it has proven beneficial to carriers, and now prevails in this State and extensively elsewhere, and is treated as an incident to the business in the conduct of the public and the acquiescence of carriers. It can not be doubted that it has increased travel and the earnings of carriers, while it has promoted the convenience and security of passengers, and if it should be abrogated, many persons would be compelled to forego journeys to the detriment of the carrier and their own inconvenience. We conclude that such attendant performs a service in the common interest of carrier and passenger, and that his entry upon a car is upon an implied invitation, which entitles him to demand ordinary care of the carrier. But, although we think the attendant is entitled to demand ordinary care for his protection, and would be entitled to recover for an injury caused by its omission, still, he could not recover unless he established that his injury was caused by some negligent act or omission on the part of the carrier. The word 'negligence' implies a duty as well as its breach, and the fact can never be found in the absence of a duty. Assuming then that the plaintiff went upon the train to render necessary assistance to a lady passenger and child, and that those in charge of the train knew that he was upon it, was it the duty of the defendant to hold the train the full length of time that was usually required for passengers to get off and on the cars at that place? The court charged the jury that it was, and this presents the controlling question upon this appeal." And the case was reversed because of the giving of the charge in the form requested. And it will be noted in this connection that, while there were other acts of negligence charged in the case than the failure to stop the train for the full length of time at the station, still, the court held that the facts did not justify their submission to the jury. But in the instant case there are other acts of negligence charged than failure to stop at the station the usual length of time or for a reasonable time, which do find support in the evidence, and of which we will now speak.

While it appears from the evidence that there was no direct notice given by plaintiff to the conductor or any one else, of his purpose in boarding the train, still, there is nothing to indicate that the train on the morning in question was late, and would not likely remain its usual time; and in view of the fact that it appears that the plaintiff knew its usual stay at such station, could he not, under the circumstances, assume that he would have time to aid his sister in boarding the train and get off in safety, provided it should stop as long as usual, and therefore concluded it was not necessary to give any direct notice of his intention to get off? and, in the absence of circumstances tending to show that it would not stop its usual time on this occasion, would it not be presumed, if any presumption is to be indulged at all, that it would remain the ordinary time rather than otherwise? So that,

since the circumstances tend to show that if it had remained the usual length of time at said station that plaintiff would likely have been enabled to perform this service for his sister, and alighted in safety, then no direct notice, under the circumstances, would seem to be necessary. Would not the practice of persons at said station of aiding their female relatives in getting on and off trains, so long acquiesced in by the company that it had ripened into a custom, dispense with actual notice, under the circumstances, and be regarded as tantamount to a notice or as a waiver of actual notice that plaintiff intended not to become a passenger, but to get off? If it could be so held, then it seems that actual notice, under the circumstances, would not be required. But if we were to concede in this case that the facts and circumstances were not sufficient to apprise the company of the plaintiff's purpose to get off, and did not amount to a waiver thereof, still, since he was acting at the time in aiding his sister within the established custom, and since it appears that the train did not stop its usual time, and had it so stopped he could have alighted in safety, we are inclined to hold that he was not a trespasser, but was there at the implied invitation of the company, to render a service, alike of interest to it and its passengers, and hence the company owed him the duty of exercising ordinary care, at least to protect him from injury in the discharge thereof; and he would be entitled to recover, if he suffered injury at its hands on account of the negligence of its servants or employes.

In the case of Doss v. Missouri, K. & T. Ry. Co., 59 Mo., 27, it was held, as stated in the syllabus thereof, that railroad companies are liable for injuries caused by the want of ordinary care, where the person injured was at the train to meet with or part from a passenger, although not himself a passenger or employe. And in a case where plaintiff had in charge a lady and her infant child, it was held that he was entitled to sufficient time to escort her to a seat and then to leave the train. If the time of stopping was too short, or if the agent of the railroad company failed to give the usual notice of the starting of the train, there was not an exercise of such ordinary care as the company was bound to employ in order to escape liability. The court saying, among other things, in its opinion: "We should be very reluctant to hold that an aged or infirm mother or sister or wife, or, indeed, any other woman, especially if encumbered with an infant child, should not be allowed the assistance of a male friend or relative in getting a seat upon a railroad car, and if such friend or relative was to be treated as a mere stranger to the company, having no claim upon the company for an injury under any circumstances; not being a passenger, it is conceded that no extraordinary care was required; but whether the neglect of customary signals would not amount to ordinary negligence is a matter upon which the Massachusetts decision is not satisfactory." Referring to the case of Lucas v. New Bedford & T. Ry. Co., 6 Gray, 64. "And if a person who visits a railroad train 'to welcome a coming guest or speed a parting one,' is held to have claims on the railroad company for ordinary care, surely one who attends a female passenger, encumbered with an infant and a satchel, is entitled to hold the company to equal responsibility."

So in this case, it being directly charged, among other things, that

the injury was the proximate result of the carrier's negligence in leaving the foot-stool on the platform or steps of the car, and but for which it is shown he could have safely alighted, and it further appearing that he was not a trespasser while on the train, we think it was sufficient to justify the submission of the issues involved in the case at least to the jury for their consideration.

The question of contributory negligence on the part of appellant, as charged by the company, was a question of fact and not one of law, and should also have been submitted to the jury under appropriate instructions. (Gist v. International & G. N. R. R. Co., 102 S. W., 457; Texas & P. Ry. Co. v. Funderburk, 30 Texas Civ. App., 22; International & G. N. R. R. Co. v. Satterwhite, 15 Texas Civ. App., 102.)

As to whether the evidence is sufficient to support and sustain any of the allegations of negligence charged in the pleadings, we refrain from the expression of any opinion, but do hold that, taken together, it is ample to require their submission to the jury under appropriate instructions from the court, and that a failure so to do on the part of the court was error, for which its judgment must be reversed and the cause remanded, and it is so ordered.

*Reversed and remanded.*

Writ of error refused to appellee.