ISRAEL KELSEY

*v.*

THE NEW ENGLAND STREET RAILWAY COMPANY et al.

[Filed August 3d, 1900.]

Where a corporation, authorized to buy and sell stocks, by its board of directors, empowered a committee thereof to give an option for certain stocks in their discretion, subject to ratification by the stockholders, such sale could not become binding on the corporation until ratified by the

stockholders.  The ratification clause never having been waived, the sale to the complainant was not binding upon the corporation, and specific performance of the agreement to sell to him was denied.

---

*Mr. Flavel McGee* and *Mr. Morgan* (of the Pennsylvania bar), for the complainant.

*Mr. William H. Corbin,* for the defendant.

STEVENS, V. C.

The New England Street Railway Company, a corporation organized under the act concerning corporations, was formed, *inter alia,* to purchase, hold, sell, invest, trade and deal in stocks. In October, 1899, it owned seventeen thousand nine hundred and fifty-four shares of stock of the Winchester Avenue Railroad Company.  On October 9th of that year, the board of directors of the New England company passed a resolution appointing a committee consisting of the president and two other directors "to receive any offers that might be made for the property."  The committee opened negotiations with the complainant.  On March 26th, 1900, the board of directors passed another resolution, as follows:

"On motion duly recorded it was unanimously voted that the committee appointed at the meeting of directors Oct. 9, 1899, be and are hereby authorized and empowered to accept any offers that may be made for the stock in the Winchester Avenue R. R. Co., owned by this company, which in their judgment are for the best interests of all concerned and to make such agreements with reference thereto as they may be advised are necessary for the delivery of the stock and payment therefor.  *All such agreements to be subject to ratification by the stockholders of the company.*"

On March 29th a written agreement to give complainant an option to buy the seventeen thousand nine hundred and fifty-four shares was made and signed by the committee.  It begins thus:

"Acting on behalf and by the written consent of the directors of the New England Street Railway Co., and appointed by the directors for the express purpose, we do hereby give"

complainant the option to buy, &c.   In this agreement·nothing
is said about ratification by the stockholders.

On April 7th the option was accepted in writing.   On April
9th the directors held a meeting, at which, according to the
minutes,

"a discussion followed upon a proposition to sell to Israel A. Kelsey the
stock of the Winchester Avenue Railroad Co., owned by this company,
but no formal proposition was submitted and no action was taken."

After this meeting, three of the directors went to the office of
Mr. Dennison, a lawyer, and requested him to prepare a call for
a meeting of the stockholders to be held on April 23d.   He
first prepared one which read as follows: "to see if the stock-
holders will vote to ratify, confirm and make valid a certain
agreement between the directors of the company and Israel A.
Kelsey," &c., but learning that the stock was in the Boston Safe
Deposit and Trust Company, and that it required a two-thirds
vote of the stockholders to get it out, he prepared a second call,
in which the foregoing purpose was stated, and the further pur-
pose of seeing whether the stockholders would vote to withdraw
the stock from the Boston company to carry out the proposed
sale.

The call was issued, and the stockholders' meeting held at the
time indicated.   A majority of the stockholders voted against
the sale.   The reason of this vote appears to have been that in
the interval between April 9th and April 23d, George A. Fernald
& Company had offered more for the stock than Mr. Kelsey, and
the interest which they represented had obtained control of a
majority of the shares.   On June 1st, the money paid by Kelsey
on the delivery of the option ($1,000) was tendered back.

The complainant prays a specific performance of the contract
and an injunction restraining the sale to Fernald & Company
I am of opinion that the interlocutory injunction now asked for
should be denied.   The complainant's argument is—*first,* that
on proper construction of the resolution of March 26th, the
assent of the stockholders was not required to make a valid sale;
*second,* if such assent was, by the terms of the resolution, neces-
sary in the first instance, it was by the action of the directors

subsequently waived or dispensed with. I agree that as the object for which the company- was formed was to buy and sell stocks, the directors had power to sell without getting the consent of the stockholders; but they could if they chose, make it a condition of any sale, that the stockholders should assent to it. This they did in the present instance. The resolution is that the committee are authorized

"to accept any offers  *  *  *  and to make such agreements with reference thereto (i. e., to the offers) as they may be advised are necessary for the delivery of the stock and payment therefor; all such agreements to be subject to ratification by the stockholders."

The resolution on its face plainly contemplates not only a bare acceptance of an offer, but an agreement as to delivery and payment. Now delivery on the one side and payment on the other, constitute the gist of the entire transaction. It is an agreement as to these which is to be the subject of ratification. It is said that the object of the clause which requires a vote of the stockholders is only to meet the requirements of the former resolution that the stock should not, without such vote, be taken from the depository to which it had been confided; but this insistment, if it be permissible to restrict the word "delivery" to delivery by the trust company, is negatived by the insertion of the word "payment." It seems to me plain that ratification by the stockholders was, under the terms of the resolution, necessary.

The complainant cannot claim to be a purchaser without notice of the scope of the agents' authority. The agency was special. He was by the very words of the option informed that it was constituted by a writing and the weight of the evidence is that a copy of the resolution was furnished to him before he received or accepted the option.

The question then remains, did the directors subsequently, either expressly or by conduct, waive the ratification clause? Certainly they did not expressly. It is argued, however, that at the meeting of April 9th, they were informed of the terms of the option and tacitly assented to it as it stood. The minutes show otherwise; but it is said that the minutes do not correctly

state what was done. The directors present at the meeting were examined and cross-examined. It is admitted by all of them that a copy of the option was not produced. There is little to indicate that its terms were fully and accurately stated, and there is still less to induce the belief that it was pointed out that the option had departed from the resolution of March 26th in the very important particular of omitting to make the sale subject to ratification. A very strong inference to the contrary is deducible from the undisputed fact that four out of the seven directors present at the meeting, immediately upon its adjournment, went to Mr. Dennison's office and signed the two calls, both of which stated that one of their purposes was to see if the stockholders would vote to ratify. There was, no doubt, at the meeting of April 9th, assent to or acquiescence in a sale to Mr. Kelsey at $48, but there was no assent to or acquiescence in the omission to make the sale dependent upon the stockholders' approval. There can be no ratification without knowledge.

I am of opinion, therefore, that there was neither an original authority to sell without the stockholders' assent nor a subsequent ratification of the terms of the option as drawn.

The injunction should be denied.