## SPENCER, Respondent, v. St. LOUIS TRANSIT COMPANY, Appellant.

**St. Louis Court of Appeals, April 4, 1905.**

1. **CARRIERS OF PASSENGERS:** Boarding Moving Car: Contributory Negligence. It is not negligence per se for a passenger to attempt to board a moving car unless the peril is so obviously dangerous that no prudent man would assume it; it is not negligence as a matter of law to attempt to board a car moving as fast as a man going at a fast walk.

2. ————: ————: Invitation to Board. Where one waiting at the proper point to take a street car sees the motorman apply his brakes and turn off the power for the apparent purpose of stopping, he has the right to assume that he is invited to board the car, and is not guilty of negligence in attempting to do so if the speed is not so great as to make the effort obviously perilous.

3. ————: ————: Comment on Evidence. In an action for injuries received while attempting to board a street car, the possession of a transfer check has no bearing upon the merits of the case, but where its possession was undisputed, a reference to it in an instruction which does not attempt to give it any force, was not error.

4. ————: Contract of Carriage. When one desiring to take passage on a street car gives his signal to the motorman of his desire to board a car, and the motorman, in apparent response, turns off the power and sets the brakes, indicating that the car is going to be stopped that the passenger may get aboard, the contract of carrier and passenger is complete.

5. ———: Boarding Moving Car: Contributory Negligence: Instruction. In an action for personal injuries received by a passenger in attempting to board a street car, where the evidence tended to show that the passenger landed safely on the step of the car and was thrown by the sudden forward lurch of the car, an instruction for defendant based upon the plaintiff's contributory negligence in attempting to board the car while in motion, was properly modified by a qualification that such negligence must have contributed directly to cause the plaintiff's injury, before it would preclude recovery.

6. PRACTICE: Instruction. The modification by the court of an instruction to the jury, which does not alter the sense or meaning, is not error.

7. CARRIERS OF PASSENGERS: Boarding Moving Car: Negligence Per Se. It is negligence per se to attempt to board a car moving at a spced of eight or ten mlies an hour.

Appeal from St. Louis City Circuit Court.—*Hon. Jas. R. Kinealy*, Judge.

REVERSED AND REMANDED.

*Boyle, Priest & Lehmann, Geo. W. Easley* and *Edward T. Miller* for appellant.

*Richard F. Ralph, Thomas T. Fauntleroy* and *Shepard Barclay* for respondent.

STATEMENT.

The plaintiff took passage on one of defendant's street cars, in the city of St. Louis, paid his fare and received from the conductor a transfer ticket, authorizing him to become a passenger of one of defendant's Olive street cars travelling east. For the purpose of boarding an Olive street car plaintiff went to the intersection of Delmar and DeBaliviere avenues and there took a position on the defendant's platform, from which passengers were received on Olive street cars. The petition alleges that after plaintiff reached the platform, he "signalled the motorman and agent of defendant of its first eastbound car, and in response to said signal the car slowed

up at said place to receive plaintiff and other passengers, and so halted that plaintiff could have safely boarded the same, and thereupon plaintiff, with the knowledge and consent of the defendant, its agents and servants in charge of said car, and upon their invitation stepped aboard the step of said car, and while in the act of boarding said car, with reasonable expedition, it carelessly and negligently was started forward with a sudden, violent and unusual lurch and jerk by defendant and its agents, and before plaintiff had a reasonable time to fully and safely board said car and before he had so boarded it, so that plaintiff was, in consequence of such careless and negligent starting of said car, thrown with great force and violence onto and upon the ground of said public street, whereby his body was greatly bruised and otherwise seriously and permanently injured, and his right leg was fractured, and his right ankle was dislocated, his nervous system was greatly damaged and shocked, from which shock and the injuries heretofore complained of he was made ill and confined to his bed ever since said accident, and he has thereby lost the earnings of his labor to the amount of $300.

The answer was a general denial and the following affirmative defense:

"And for a further answer and defense defendant says that plaintiff's alleged injuries were caused by his own negligence in attempting to board a moving car, which had not stopped for the reception of passengers, and without invitation from those in charge of the car so to do."

Plaintiff testified that he is thirty-seven years old, married, division chief of the Western Union Telegraph Company, and lives in St. Louis county five miles beyond the city limits. On the morning of February 15, 1902, at about seven o'clock, plaintiff boarded one of the defendant's cars near his home, intending to come down town to his office. He paid his fare and left the car at DeBaliviere and Delmar avenues, with a transfer ticket

to the Oliver street line at that point, and attempted to board a through Olive street car. Plaintiff testified that the street car company discharged the passengers at what they called "the shed," and passengers were obliged to walk across DeBaliviere avenue to a platform, which is a distance of about two hundred feet.

"Q.   Where is the place where you got on the car going east; what crossing is that? A.   It is on the corner of Delmar and DeBaliviere.

"Q,   On the corner of Delmar and DeBaliviere, as you call it—which one of the four crossings on which passengers embark to go down town? A.   The southeast.

"Q.   Tell the gentlemen of the jury where you came from, from what point to that crossing? A.   I walked across DeBaliviere avenue, which I think is about two hundred feet to the platform.

"Q.   Was that or was it not the usual place where passengers get on to come down town? A.   That is where we always take the Olive street car.

"Q.   Now, tell what occured? A.   I should judge there were seven or eight passengers beside myself waiting at this platform, all waiting for a car, and an eastbound car came along, and I happened to be standing furtherest west on this platform, and as the car came along I saw the motorman apply the brake and throw the power off; I should judge that the car was running at the speed at which a man walks, at the time that I got on the car; at the time I boarded the car, or shortly afterwards, the power was thrown on suddenly, and I lost my hold on the handle.

"Q.   In order to make this more plain, as you got on board the car, tell the jury what you took hold of; the side handles or what? A.   The upright handles on the side.

"Q.   Were you on the lower step? A.   I was on the step. I boarded the car but couldn't keep my hold.

"Q.   After this sudden movement you speak of, then

what happened? A. I made an effort to hold on but couldn't do it; the next thing I remember was lying in the street."

Plaintiff testified that he fell face downward, on his right ankle, breaking his right leg at or near the ankle bone, as a consequence of which he was laid up and was unable to resume his work until April following; that at the time he was injured he was earning twenty-five dollars per week. Plaintiff further testified that he suffered intense pain for the first two or three weeks after the injury, and still suffers pain from the injury to his ankle, which has to be strengthened by a rubber support; that his foot is enlarged and he walks with difficulty. Plaintiff also testified that when the motorman checked the speed of the car he understood from his action that he and the other twelve or fourteen persons waiting to take passage on the car were invited to get aboard.

The following appears in plaintiff's cross-examination:

"Plaintiff admitted signing the following statement, but said that he did not read it, nor was it read to him, nor did he know what it contained, but said that it was taken about half an hour after the accident, while he was suffering great pain, and that the statement was made largely from statements made by plaintiff's father to defendant's claim agent:

" 'I walked from the office to the corner preparatory to getting on an Olive street car; as the front end of the car passed me it was going at such rate of speed I could have gotten on, but as the rear platform came up the motorman applied the current and when I took hold I was thrown clear from the car, breaking my right leg at the ankle. There were several other persons waiting for the car.' "

Etta M. Devore testified that she was present with plaintiff and others waiting for a car to take them down town, "and a car came from the west; the car

slackened as it came towards us and Mr. Spencer boarded the car, he got partly on before it—then the car started suddenly and Mr. Spencer fell off." Witness also testified that the car was not running very fast when it came up and that it ran about a car length before plaintiff was throw off.

Trusten P. Kidd testified that he was present for the purpose of boarding a car when plaintiff was injured; that plaintiff was at the far end of the platform, west of the crowd, and was the first and only one of the company who attempted to board the car.

"Q. Now, as you noticed it coming up, what did you observe in regard to the motorman's action? A. There was all the evidence that he was going to stop for the passengers waiting.

"Q. What did he do? A. He threw the power off when he came up to this switch—led us to believe he was going to stop at that point, and Spencer was standing the first one nearest the car coming.

"Q, Did he put on the brake? A. He did.

"Q. How slow was it going when Spencer got aboard? A. Oh, a walk, a fast walk.

"Q. A fast walk of a man? A. Yes, sir.

"Q. Did you see him get on? A. Yes, sir.

"Q. Where did he take hold; did you notice? A. The handle of the car.

"Q. The handle of the car platform? A. The handle of the car platform.

"Q. After he got aboard then what happened? A. The car gave off power—all the evidence of giving off power so hard he rushed forward with it.

"Q. Did it rush forward? A. Yes, sir.

"Q. What was the effect of that on Mr. Spencer? A. He was thrown off.

"Q. Was he still standing on the lower step at the time he was thrown off? A. Hadn't got up further that the lower step."

The testimony of several other of the persons pres-

ent and waiting to take a car is substantially the same as that of Mr. Kidd. One other of the witnesses, C. A. Mosley, admitted that he signed the following statement:

"Clerk, Browning and King, residence, county, taken at Browning and King's on the fifteenth of February, 1902; in the case of Frank Spencer, damaged or injured at DeBaliviere and Delmar, on the fifteenth of February, 1902. Twelve or fifteen people standing on corner waiting for car. I did not see motorman motion crowd to wait for next car; car was running fast and too fast for me to get on, and did not slow up. This man caught hold of rear platform and was thrown and dragged about twenty feet; car ran nearly to next corner before it stopped. Maryland car was following close behind. Through car was what he wanted."

Witness testified that he did not read the statement before signing it; that he told the company's agent what to write, and part of what he wrote was correct and part incorrect.

Dr. I. H. Bird testified, in respect to plaintiff's injuries, as follows:

"Q. Now, doctor, tell the jury in as simple a form as you can, without being very technical, just what sort of fracture he suffered? A. That is what we know as a 'Potts fracture,' sometimes called 'railroad fracture,' it is a fracture that is not always alike; sometimes a fracture of a bone, sometimes a ligament, and sometimes both.

"Q. What bones or ligament were broken in Spencer's case? A. The small bone in the lower part of the leg was broken about two inches above the ankle, and it is still broken, never united; the inner knuckle of the joint was broken, and the outer knuckle, which is a continuation of the smaller bone of the leg, it has been broken about two inches above the joint; in its breaking—the muscle that holds the two bones together, has thrown the upper end of the lower fragments toward the outer bone, and that throws the outer knuckle out. Besides that,

he had a tear of this inner ligament that holds the bones together, the large bone of the leg with the connecting bone of the foot.

"Q. That is, the astragalus? A. Yes, sir; that together with the fibula and tibia forms the knuckle; with this, what we call the 'internal lateral ligament' was torn off—that ligament has lengthened out and also thickened out—the inner column is broken off and has also increased the size of the end of the bone and that interferes with the mechanism of the joint, and again because of the length of these ligaments, that throws the foot out."

Witness further testified that plaintiff's injuries would be permanent and accompanied by future pain.

The evidence shows that the car came from defendant's carshed, a short distance west of DeBalivere avenue, and had to pass over a number of railway switches to reach the platform where the crowd was waiting. The motorman and conductor testified that they were seven minutes behind schedule time getting out of the carsheds and in order to make up this lost time did not intend to stop and take on plaintiff and other persons who were waiting, but intended to pass them and to make stops at every second street crossing instead of every crossing, for the purpose of taking on passengers, in order to make up for lost time; that the switches over which they had to move the cars were about three cars length from the platform at Delmar and DeBalivere avenues, and as soon as the car was over these switches, having no intention of stopping to take on passengers at the corner of Delmar and DeBolivere, the power was turned on and the car was running at a speed of from ten to twelve miles per hour as it passed the platform. The motorman testified that he both signalled and hallooed to the crowd to take the next car, which was immediately behind his car. The conductor testified that the plaintiff "made a grab" for the handrail, missed it and caught the rear part of the platform and was dragged some distance in that position

before he fell; that he was on the rear platform and grabbed hold of the plaintiff as he was swinging from the platform and tried to pull him aboard but was unable to do so; that plaintiff's feet were at no time on the step of the car, and as soon as plaintiff fell he had the car stopped. In rebuttal the plaintiff and two other witnesses testified that the motorman did not give a signal to take the next car by waiving his hand and if he spoke he was not heard. They also testified that the conductor was not on the back platform, but was in the front end of the car standing on a seat, apparently engaged in adjusting the fare register.

At the close of the evidence defendant asked a peremptory instruction to find for it. This was refused, and under the instructions given the jury returned a verdict for the plaintiff for fifteen hundred dollars. Defendant appealed.

BLAND, P. J. (after stating the facts).—1. Defendant strenuously insists that plaintiff's own evidence shows that he was guilty of contributory negligence, as a matter of law, in attempting to board a rapidly moving car. Plaintiff's evidence tends to show that the car was running about as fast as a man could ordinarily walk. The evidence of some of plaintiff's witnesses put the speed at what would be a fast walk. One on boarding a car for the purpose of becoming a passenger thereon is bound to exercise ordinary care, and if, as was held in Weber v. Railway, 100 Mo. 194, 12 S. W. 804, 13 S. W. 587, the rate of speed was so high and the place where plaintiff attempted to get on or off was so obviously perilous that a person of ordinary prudence would not attempt it, and yet plaintiff made the attempt and was injured, he should be nonsuited. But as was held in Eikenberry v. Transit Co., 103 Mo. App. l. c. 452, 80 S. W. 360, every risk one voluntarily assumes is not negligence *per se*. It is not so unless the peril is so obviously dangerous that no prudent man would assume it.

In jurisdictions where it has not been held negligence, as a matter of law, for one to attempt to get on or off a slowly moving train or cars, the courts have held that one who attempts to get on a train or car, moving at a speed of not more than three or four miles per hour, was not guilty of contributory negligence, as a matter of law. Eikenberry v. Transit Co., supra, l. c. 452, and cases cited. Plaintiff was a young man, presumably possessed of the ordinary freedom of action and agility possessed by men of his age, and we will not venture to say, as a matter of law, that he was guilty of contributory negligence in attempting to board the car, if it was moving at the speed the evidence in his behalf tends to show it was travelling.

As supporting its demurrer to the evidence, defendant further contends that there is no evidence that any signal was given to the motorman, by the plaintiff or any one of the crowd, that plaintiff or any of them wanted to take passage on the car, and for this reason the relation of passenger and carrier was not established. The evidence shows that the platform on which plaintiff and others were lined up was constructed by defendant for the convenience of its passengers in getting on and off its cars, and that plaintiff and others were on the platform early in the morning in the attitude of waiting for a car to take them down town to their several places of busines and employment. These circumstances were notice to the motorman of the desire of the crowd to board the car, and his evidence, that he waived his hand and hallooed to them to take the next car, shows conclusively that he knew they were on the platform for the purpose of taking a down town car, therefore, if the motorman, as plaintiff's evidence tends to show, turned off the power and applied the brake and checked the speed of the car for the apparent purpose of taking on passengers, and plaintiff was induced thereby to believe he was going to stop the car for that purpose, then plaintiff had a right to assume that he and the crowd were

invited to board the car, and if, when he attempted to board it, its speed was not so great as to make the effort obviously perilous, he was entitled to have his case submitted to the jury, and there was no error in refusing defendant's demurrer to the evidence.

2. Compliant is made of the first instruction given for plaintiff. It reads as follows:

"The court instructs the jury, that if you believe from the evidence that, on February the fifteenth, 1902, between seven and eight a.m., plaintiff was standing at or near the southeast corner of Delmar and DeBaliviere avenues in St. Louis, and that said place where plaintiff stood was the usual place where defendant received passengers on board its street cars, bound eastward on defendant's Olive street line and that defendant was then a common carrier of passengers from that place eastward over said line; and that plaintiff had previously paid a fare of five cents to an agent of defenant for carriage by defendant over said line eastward from said place, and that plaintiff was in view of the motorman (in charge of one of defendant's cars of said line) as it approached from the west the said place where plaintiff was; and that thereupon said motorman put on his brake and caused said car to check its speed and to approach and reach said place at the rate of speed so slow to permit a man of ordinary prudence and caution to board said car in safety; and if you further find from the evidence that from the movement of the said car, and from the action of said motorman, plaintiff had good reason to believe and did believe that he was then and there invited to step aboard of said car as it reached the place where he was standing; and if you also believe from the evidence that when said car, while moving as aforesaid, reached the said place where plaintiff stood, he mounted the step leading to the rear platform of said car, and that immediately thereafter said motorman in charge of said car caused it to suddenly move forward with a sharp jerk, so

that plaintiff was thrown thereby from said car and consequently sustained injuries; and if you further find from the evidence that, in causing said sudden movement of said car, said motorman failed to exercise that degree of care in the operation of said car as is defined in another instruction to be the care required of a common carrier of passengers, and that plaintiff, in getting on said car and in his other conduct in the circumstances aforesaid, exercised ordinary care such as a person of reasonable caution would have taken to avoid danger and injury, in the same situation and circumstances, as those of the plaintiff at that time, then your verdict should be for the plaintiff."

The instruction is criticised for mentioning the transfer ticket plaintiff had in his possession. Reference to the ticket might very well have been left out of the instruction as it had no bearing whatever on the merits of the case; it was some evidence of plaintiff's purpose to take an Olive street car to be carried down town, nothing more. But the mentioning of the ticket is a mere recital of an uncontroverted fact in evidence. The instruction does not attempt to give it any force or effect upon the merits of the controversy, therefore, its presence in the instruction could not possibly have done the defendant any harm. We think, as a whole, the instruction properly declares the law of the plaintiff's case.

The second instruction given for plaintiff is as follows:

"The amount or degree of care required by the law of a common carrier of passengers and of the said motorman in the operation of said car, as mentioned in the first instruction of the court, was the highest practicable care which a capable and faithful railroad man would exercise in the same situation and circumstances as those in which said motorman was then placed; and the omission of such care would be negligence on the part of said motorman and of said defendant."

Plaintiff's evidence shows that he was on the step of the car, holding on to the handrail, from which position he was thrown by a sudden forward lurch of the car; and we think plaintiff's evidence tends to show that the conduct of the motorman was such as to invite plaintiff to board the car or, at least, to lead him to believe that he was invited to board it. In either case, the defendant owed him the highest degree of care mentioned in the instruction. The contention that plaintiff's evidence does not tend to establish the relation of carrier and passenger is not supported by sound reasoning. Contracts of carriage, as between a street railway and its passengere, are made every minute in the day by siginal and by movements of its servants in the management of its cars, and such contracts are as complete, as well understood, and as binding as if reduced to writing and signed by the parties. Where a signal is given by one wishing to board a street car, or where his attitude is such as to indicate such wish, and either is seen and recognized by the motorman and, in apparant response, he turns off the power and sets the brake, in view of the passenger, indicating to him that the car is going to be stopped that he may get aboard, and he, without negligence, attempts to do so, the contract of the carrier and passenger is complete; for the passenger understands from the movements of the motorman that his offer to become a passenger is accepted and he may act on it with as much reliance as if the offer and acceptance had been reduced to writing, and the offer cannot be repudiated or avoided by showing on the part of the company that the motorman turned off the power or set the brake for some purpose other than taking on passengers, if such other purpose was not in some way communicated to the passenger. A secret intention or mental reservation on the part of the motorman, in respect to the handling of his car, is no more available to disprove a contract of carriage than is a secret intention or mental reservation of a party to a

written contract available to show that he did not intend to be bound by the contract as written.

3. The defendant asked the following instruction:

"The court instructs the jury that if plaintiff attempted to board defendant's car while the same was in motion and going at such a rate of speed that a person of ordinary care and prudence would not have attempted to board the same under the circumstances, then he was guilty of contributory negligence and cannot recover in the cause, whether the defendant was negligent or not, and if you find from the evidence that plaintiff did so attempt to board such car while so moving, then your verdict will be for the defendant."

The court modified the above instruction by inserting the following clause "and that that fact directly contributed to cause the plaintiff's injury." between the word "circumstance," in the fifth line and the word "then," in the sixth line, of the instruction and gave it as thus modified. The modification of the instruction is assigned as error. According to plaintiff's evidence, he landed safely on the step of the car and was thrown thereform by the sudden forward lurch of the car; if so, then his attempt to board the car while it was in motion was not the proximate cause of his injury, but the sudden lurch of the car, which caused him to fall. In the light of this evidence, we think the modification of the instruction was proper.

4. The court modified defendant's instruction numbered seven by inserting the words "of itself" between the words "not" and "authorized," in the last line of the instruction. It reads as follows:

"The fact that the motorman failed to stop the car for the plaintiff to get on, if you find it from the evidence to be a fact, does not authorize the plaintiff to recover, because that is no part of the cause of action alleged by the plaintiff in his petition."

The modification was harmless and in nowise altered the sense or meaning of the instruction.

The court gave the following instruction for defendant:

"If the jury find from the evidence that plaintiff attempted to board a moving car while said car was moving at a rapid and dangerous rate of speed, without invitation, inducement or direction of defendant's agent in charge of said car, then the plaintiff assumed the risk of injury to himself in making the attempt to so board said car; and if the plaintiff's alleged injuries were either caused or materially contributed to by the plaintiff's effort to so board said car, then your verdict must be for the defendant."

And refused the following:

"The court instructs the jury that if you find from the evidence that plaintiff attempted to board one of defendant's cars when it was running at a speed of eight or ten miles an hour, or at a greater rate of speed, and that the speed of the car caused him to be thrown and injured, then if you so find and believe, the court instructs you that plaintiff is not entitled to recover and your verdict will be for defendant."

The conductor testified that the car was under full speed (about ten miles an hour) when plaintiff attempted to board it. The motorman testified that, to the best of his judgment, the car was running at a speed of from ten to twelve miles per hour.

In Heaton v. Railway, 65 Mo. App. 479, it was held negligence, as a matter of law, for one to attempt to board a steam railroad train, running at a speed of not less than six or seven miles per hour, knowing that the train was not going to stop. And in Murphy v. Railroad, 43 Mo. App. 342, it was held that it would be negligence *per se* for one to attempt to get on a steam railroad train running at a speed of six or eight miles per hour.

In Eikenberry v. St. Louis Transit Company, supra, we held that the plaintiff was not guilty of contributory negligence in attempting to board a street car that had

been slowed down to a speed of four or five miles per hour, when the plaintiff had good reason to believe it was about to stop to take on passengers. But there must be a limit somewhere and that it is the limit, when the car is running at a speed so great that it is obviously perilous to attempt to board it. That such peril is obvious where the car is running at a speed of eight or ten miles an hour, cannot admit of two sane opinions.

We think, under the evidence adduced by the defendant, that the refused instruction should have been given, and that the error was not cured by the one that was given on contributory negligence.

The judgment is reversed and the cause remanded. All concur.