MAUD D. DESKINS, Respondent, v. CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, November 21, 1910.

1. CARRIERS OF PASSENGERS: Alighting away from Station. Plaintiff was forced to step down some three feet from the last step of the car, because the mixed train on which she was travelling did not pull fully up to the station, and in alighting on the ground covered with ballast of cinders or gravel wrenched herself so badly that she suffered a miscarriage. In thus alighting, she persisted in keeping hold of a heavy dress-suit case. *Held*, although it was the duty of the common carrier to furnish to passengers a reasonably safe place in which to alight at destination, nevertheless it was not imperative that the car be stopped at the platform, especially as this was a mixed train.

2. ———: ———: Contributory Negligence. Plaintiff was guilty of contributory negligence as a matter of law in persisting in retaining hold of the heavy dress-suit case while alighting away from the platform.

Appeal from Clinton Circuit Court.—*Hon. Alonzo D. Burnes,* Judge.

REVERSED AND REMANDED *(with directions).*

*Paul E. Walker* and *E. C. Hall* for appellant.

It was error for the court to sustain the plaintiff's motion for a new trial. The demurrer to the evidence was properly sustained. The facts and conditions surrounding the occurrence of which plaintiff complains were testified to by plaintiff herself and show conclusively that plaintiff was guilty of contributory negli-

gence, which caused the injury, if any. Young v. Railroad, 93 Mo. App. 267; Davis v. Railroad, 159 Mo. 7.

*John A. Cross, R. H. Musser* and *J. L. Cross* for respondent.

(1) In reviewing the question whether a demurrer to the evidence was properly sustained, the view of the evidence most favorable to the plaintiff must be adopted. Schermerhorn v. Herold, 81 Mo. App. 461; Dorsey v. Railroad, 83 Mo. App. 528; Steube v. Christopher, 85 Mo. App. 640; Pauck v. St. Louis, D. B. & P. Co., 129 Mo. 467; Moore v. Transit Co., 95 Mo. App. 728; Baxter v. Transit Co., 103 Mo. App. 597; Story v. Transit Co., 108 Mo. App. 424. (2) The plaintiff in alighting from the car with a grip in her hand was not guilty of such negligence as would justify the court in taking the case from the jury. Railroad v. Maugans, 61 Md. 53.

JOHNSON, J.—Action by a passenger against a common carrier to recover damages for personal injuries alleged to have been caused by the negligent breach of the carrier's duty to provide a reasonably safe landing place for the passenger at the end of the transportation. The defense is a general traverse and a plea of contributory negligence. The trial court sustained a demurrer to plaintiff's evidence and in obedience to a peremptory instruction the jury returned a verdict for defendant. Afterward the court sustained a motion for a new trial filed by plaintiff and defendant, dissatisfied with this ruling, brings the case here by appeal. In the order granting a new trial the ground of the ruling is not stated and the question for our decision is whether or not the evidence of plaintiff is sufficient to carry to the jury the essential issues of facts raised by the pleadings.

The injury occurred in the morning of April 9, 1908, at defendant's city depot in Cameron. Plaintiff,

a young married woman living in Cameron, was returning home from a trip to Winston, a neighboring town. She bought her ticket and became a passenger on a mixed train which left Winston at about eleven o'clock. The train consisted of freight cars and a passenger coach at the end. Freight was to be unloaded at the Cameron city depot and the train stopped at the place most convenient for this work. The passenger coach was not run to the station platform but was stopped at a point where passengers in alighting would be compelled to step about three feet in descending from the lower step of the car to the ground. The passengers were three women, one seventy-one years of age. Plaintiff, who was young, healthy and vigorous, carried heavy hand baggage, of the safety of which she appears to have been very solicitous. She was enceinte and had been in this condition about three months. In answer to the announcement of the conductor that the passengers would have to get off there, she protested, so she states, that "it wasn't a suitable place for ladies to get off." To which the conductor replied, "It's all right. You can make it all right and it won't hurt you. You can just jump." Relying on this assurance plaintiff and her fellow passengers left the car. Plaintiff, carrying her heavy suit case in her right hand, descended the steps on the east side of the platform and, grasping the handhold with her left hand, stepped or jumped from the last step to the ground which was covered with ballast of cinders or gravel. The place was slanting but it was not rough and plaintiff did not fall. She hung on to her suit case all the time. When she landed she felt a pain in her back. She walked home and three days later suffered a miscarriage which her evidence tends to show was caused by stepping down so far with the heavy suitcase in her hand. She states, "My grip was heavy and I had to let loose of the rod. It jerked me loose." On cross-examination she made admis-

sions tending to show that her miscarriage was the re-
sult of her own evil and unnatural purpose which led
her to procure and take drugs to destroy her embry-
onic child, but for present purposes, we do not find it
necessary to consider such evidence and we shall re-
gard the proofs as sustaining the charge that the proxi-
mate cause of the injury was the long step taken by
plaintiff while carrying a heavy load. Plaintiff testi-
fied on cross-examination:

"Q. Did you let loose of that car before your feet
struck the ground or afterwards? A. Well, I held
it as long as I could. I don't know whether I let loose
of it or not.

"Q. You didn't try to drop your grip? A. No,
sir, I didn't want to drop my grip. I wanted to hold
on to it.

"Q. It was a very heavy grip, wasn't it? A.
Yes, sir, it was.

"Q. Why didn't you put it down before you got
off? A. Because I had some things I was afraid
would break. I thought I could get off all right."

The other passengers alighted without difficulty,
the woman seventy-one years old following plaintiff.
The trainmen left the car to attend to the freight busi-
ness without offering to assist the passengers, nor
was their assistance requested by plaintiff who, of
course, knew her condition while the trainmen did not
know of any special need for assistance on her part.

The contract entered into by defendant as a com-
mon carrier for hire bound defendant to exercise the
highest degree of care not only for the safe transpor-
tation of plaintiff from Winston to the Cameron City
depot, but also to give her a reasonably safe place *at
that station* in which to alight from the car in which she
was riding. [Fillingham v. Transit Co., 102 Mo. App.
573, and authorities cited.] In that case Judge GOODE
said:

"The degree of care required of the carrier for a passenger's safety while he is leaving the vehicle, is as high as that required while he is in transit; that is to say, the extraordinary care imposed by the law on carriers of passengers, begins when the contract of carriage takes effect on the rights of the parties and continues unimpaired until that contract ends with deposit at destination; thus protecting passengers as they get on and off conveyances. [Weber v. Railway, 100 Mo. 194;. Grace v. Railway, 156 Mo. 295.] Part of this duty to safeguard passengers while leaving a car or other vehicle consists in taking care to put them off at a reasonably safe place. [Talbot v. Railway, 72 Mo. App. 291; Atkinson v. Railway, 92 Mo. App. 489; Young v. Railway, 93 Mo. App. 267; Bass v. Railway, 46 Atl. 1059; Stewart v. Railway, 80 N. W. (Minn.) 854; Johnson v. Railway, 11 Minn. 296; Bass v. Railway, 70 N. H. 107; Nellis, Street Railways, p. 484; Hutchinson, Carriers, sec. 615.]"

In the performance of this duty it was not imperative that the car in which plaintiff was a passenger should be stopped at the platform. Very often passenger trains are too long for all of the cars to be stopped at one time alongside the platforms at any but the largest stations. And with respect to mixed trains, the proper dispatch of the business of the train frequently demands that the passenger vehicle, which is usually at the end of the train, be stopped some distance away from the platform. "Where a freight train is accustomed to discharge its passengers at some place other than the platform, or where it is impracticable for it to reach the platform with the caboose or car in which passengers are carried, the passenger may be required to leave the train at some other appropriate and convenient place." [2 Hutchinson on Carriers (3 Ed.), 1326.]

We think defendant had the right to stop the train where it did, provided it offered the passengers a rea-

sonably safe place in which to alight. It was a bright
day; the place was dry and not rough and the only
objection that is or can be urged against the place
was the height of the lower step from the ground. A
step of three feet presents no difficulty to a young,
healthy person who may have the assistance of hand-
holds. Plaintiff states she did not consider the place
unsafe but only "unsuitable to ladies." Her testi-
mony and the physical facts show beyond controversy
that she could have alighted in ease and perfect safety
but for her own stupidity in jumping off with a heavy
load which ordinary care should have prompted her
to leave on the step until after she had reached the
ground.

There is nothing in the suggestion that the train-
men should have offered to assist the passengers in
alighting. We said in Young v. Railway, 93 Mo. App.
l. c. 273: "It is not the duty of a railway company's
employees to assist its passengers in getting on and off
its cars in all cases. If egress or ingress is easy, as-
sistance cannot be claimed by a passenger as a matter
of right." And further it was said, in the same case:
"We know of no law, nor has our attention been called
to any which required the defendant to furnish porta-
ble steps for the use of its passengers in entering or
leaving any of its cars. If it did furnish such steps,
it was but a self-imposed duty for the violation of
which there could, of course, be no liability. [Baring
v. Railway, 126 Mo. 392.]"

Had plaintiff requested assistance, doubtless, it
would have been freely rendered but with every ap-
pearance of ability to alight in safety and with no
suggestion of being in a condition that would make
unusual exertion harmful, we think plaintiff's mishap
is conclusively shown by her own evidence to have
been the result of her own negligence in alighting and

not of any breach of defendant's duty to furnish her a reasonably safe place in which to alight.

It follows that the learned trial judge erred in granting a new trial. The judgment is reversed and the cause remanded with directions to enter judgment for defendant. All concur.