BY THE

ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

OCTOBER TERM, 1911.

HOMER LE DUC, By Next Friend, Respondent, v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, Appellant:

Springfield Court of Appeals, November 6, 1911.

1. CARRIERS OF PASSENGERS: Mixed Trains: Customary Stopping Place: Invitation to Board Moving Train. Plaintiff was injured while attempting to get on the passenger coach attached to a mixed train as it was moving out of a station. When the train pulled in it had stopped with the passenger coaches at least three hundred feet north of the depot, but alongside a chat walk, which was about four feet wide, and which was an extension of the platform, the latter being twelve to fifteen feet wide, and which was also made of chats and on the same level. The testimony on behalf of plaintiff tended to show that it was the practice of defendant to stop its mixed trains going south, so the passenger coaches would be opposite the platform, either at the time they first pulled in or before leaving the station. As the train started the conductor hallooed "All Aboard" and upon discovering that the train would not stop, plaintiff attempted to get on and was injured. Held, that to entitle plaintiff to recover he must prove that defendant had a usual and customary place at which to stop the passenger coaches of its mixed trains going south on the schedule of this train, that it departed from such usual practice on this occasion and by reason thereof plaintiff, being familiar with its customary stopping place, was misled and induced to refrain from boarding the train while it was standing. Held, further, that the call of the conductor "All Aboard" only went to the question of notice that the train would not stop again.

2. ———: Place to Board and Alight: Duty of Carrier to Furnish. It is the duty of a railroad company to furnish its passengers a reasonably safe and convenient place at which to get on and off its coaches, but it is not necessarily required to stop its passenger

coaches at any particular part of the platform or at the platform at all, so the place at which the coaches were stopped was a reasonably safe and convenient place for the accommodation of the passengers.

3. ———: ———: ———: **Customary Stopping Place.** Ordinarily where a railroad company places its coaches at a point reasonably safe and convenient for the use of its passengers in getting on and off its trains, it has discharged its duty to its passengers in this regard. But if it be shown that the carrier usually places its passenger coaches at or near a certain place, then the passenger, who knows of this custom, has the right to assume—in the absence of notice to the contrary—that the coaches will be placed at the usual stopping place and he then be given an opportunity to board the train, and a failure to observe such custom by the carrier would be negligence.

4. ———: ———: ———: ———: **Stopping at Unusual Place.** Where it is the custom of a railroad company to stop its passenger coaches attached to a mixed train at a certain place to enable its passengers to get on, the fact that the train may have stopped with the coaches at another point, some distance away, and remained there while the train was switching and freight was being unloaded, would not be notice to the passenger that he was expected to walk to such coaches and get on them at the unusual place.

5. ———: **Mixed Trains: Stopping at Platform: Instructions.** The space between the defendant's depot and track and running north one hundred and thirty-five feet was covered with chats the strip being twelve to fifteen feet wide and continuing north along the track the chats covered a strip four feet wide. There was nothing about the construction of the wider portion or platform as distinguished from the four foot strip or walk, which would indicate to a passenger that when a mixed train stopped with its passenger coaches opposite the chat walk, that it would pull up and stop again in front of the platform before leaving the station. *Held*, that it was error to instruct the jury that plaintiff, who intended to become a passenger on said train and was injured while boarding it in motion, had a right to assume that the train would be stopped at said platform, unless they believed it was the custom of defendant to stop its passenger coaches at some other point where the passengers could board the same. *Held*, further, that the instruction would have been correct had the platform been elevated and with distinct boundaries.

6. **NEGLIGENCE: Contributory Negligence: Boarding Moving Train.** Ordinarily it is not negligence *per se* to attempt to board a slowly moving train, but there is always more or less danger attending such act. The degree of danger depending upon the surroundings, the speed of the train and the activity and experience of the party. So if a party has never boarded a moving train before and instead of boarding it while it was standing and

without any right to expect it would stop the second time, he waited until it started and then attempted to board it, and while doing so was injured, his negligence would bar a recovery.

Appeal from Greene Circuit Court.—*Hon. Alfred Page*, Judge.

REVERSED AND REMANDED.

*Robert T. Railey* and *Barbour & McDavid* for appellant.

(1) Under the evidence and from the experience and observation of all men, it is perfectly manifest that this was an ordinary attempt at hopping on a moving train, which, if it had been successful would have caused some pride to the respondent, it being his first attempt, and likewise to his leader, Parsons, himself an experienced train hopper, but failing, the unfortunate injury resulting therefrom is made the basis of a suit for damages now before this court. Heaton v. Railroad, 65 Mo. App. 479; Hurt v. Railroad, 94 Mo. 263; Quinn v. Railway, 218 Mo. 554. (2) The train was stopped with the passenger coaches opposite the chat platform where they remained standing for about ten minutes. This was a long mixed train and this stop was made in accordance with the usual practice of the defendant. The coaches stood at a place reasonably near the depot and the unobstructed chat platform leading thereto afforded the plaintiff an easy and convenient way to the coaches, and it was his duty to have entered them there instead of waiting at the depot and then attempting without the knowledge of defendant's employees, to get on after they had started, because his companion Parsons had tried it successfully. Under the facts in this case he is denied a recovery. Deskins v. Railroad, 151 Mo. App. 432; 2 Hutchinson on Carriers (3 Ed.), 615; Hays v. Railroad, 51 Mo. App. 438; Waller v. Railroad, 59 Mo. App. 429; Quinn v. Railroad, 218 Mo. 554; Johnson v. Railroad, 143 Mo. 379; Ray v. Railroad, 147 Mo. App. 332; Saxton v. Railroad, 98

Mo. App. 494; Hawk v. Railroad, 130 Mo. App. 658; Hedrick v. Railroad, 195 Mo. 104; Guffey v. Railroad, 53 Mo. App. 462; Leach v. Railroad, 137 Mo. App. 300; Portuchek v. Railroad, 101 Mo. App. 52. (3) There is no evidence to show a custom on the part of the defendant of stopping the passenger coaches, on this mixed train, at the wide part of the chat platform. The evidence on the part of both plaintiff and defendant shows conclusively that all parts of the narrow part of the platform had been used for and by passengers ever since it was constructed. Percell v. Railroad, 126 Mo. App. 43; Erlich v. Ins. Co., 103 Mo. 231; Johnston v. Parrott, 92 Mo. App. 199; Shields v. Railroad, 87 Mo. App. 644. (4) It is uncontradicted · that the passenger coaches did stop at the platform at a place which afforded plaintiff easy and convenient access to them and that they remained standing there for about ten minutes, more than sufficient time for plaintiff to have gone back and gotten on. Plaintiff himself says he could have easily gotten on and that he had plenty of time to do so. It is certain that the conductor did not see the plaintiff and did not know that he intended to get on or that he tried to get on. The plaintiff himself says so. None of the employees knew it. Under these circumstances there can be no recovery. Hurt v. Railroad, 94 Mo. 263; Clotworthy v. Railroad, 80 Mo. 220; Strauss v. Railroad, 75 Mo. 185; Ely v. Railroad, 141 Mo. App. 717; Groshong v. Railways, 142 Mo. App. 728; Meriwether v. Cable Co., 45 Mo. App. 534; Worthington v. Lindell Railway Co., 72 Mo. App. 166; Schepers v. Railway, 126 Mo. 673; Quinn v. Railway, 218 Mo. 554.

*White & White* for respondent.

(1) It was the duty of the defendant to stop its passenger coaches at the platform where it usually received and discharged passengers. 6 Cyc. 586; 5 Am. & Eng. Ency. of Law, 574; Fulks v. Railroad, 111

Mo. 343; Richmond v. Railroad, 49 Mo. App. 109; Gress v. Railroad, 109 Mo. App. 719; Murphy v. Railroad, 43 Mo. App. 342; Swigert v. Railroad, 75 Mo. 475; Dye v. Railroad, 135 Mo. App. 254; Adams v. Railroad, 100 Mo. 565.   (2) ˙ The train in this case, though a mixed train composed of both passengers and freight cars, was a   passenger train, and the defendant's duty was to regulate it as such.   Railroad v. Union Depot, 71 N. W. 23; 6 Words and Phrases, 5227; Railroad v. People, 33 N. E. 176; 7 Words and Phrases, 6038; 6 Cyc. 581; Adams v. Railroad, 100 Mo. 565.   (3)   The plaintiff was not guilty of contributory negligence as a matter of law in boarding the train when it was moving at a rate of three or four miles an hour, or as fast as a man could walk.   Eikenberry v. Transit Co., 103 Mo. 452; Spencer v. Transit Co., 111 Mo. App. 653; Kirby v. Railroad, 146 Mo. App. 312. (4)   If the conductor called "all aboard" as he got on the train while the train was in motion, as the passenger coaches passed the platform on which the plaintiff stood this was an invitation to board the train. At least it was a question for the jury, whether it was or not.   3 Thompson on Negligence, secs. 2854, 2855; 3 Hutchinson on Carriers, secs. 1221; 5 Amer. and Eng. Ency. of Law, 571; Richmond v. Railroad, 49 Mo. App. 109; McGee v. Railroad, 92 Mo. 218; 6 Cyc. 639; McNally v. Railroad, 145 Mo. App. 130; Dye v. Railroad, 135 Mo. App. 254.   (5)   An invitation on the part of the conductor to board the train was an assurance that the speed would not be increased while it was passing the platform.   The plaintiff had a right to rely upon it and the company was liable for the injury that ensued in consequence of it.   6 Cyc. 614; Carr v. Railroad, 21 L. R. A. 354; Murphy v. Railroad, 43 Mo. App. 342; Owens v. Railroad, 84 Mo. App. 146; Wise v. Railroad, 135 Mo. App. 230; Austin v. Railroad, 149 Mo. App. 405; McGee v. Railroad, 92 Mo. 218; Thompson on Negligence, sec. 2854.

COX, J.—Action for damage for personal injury. Judgment for plaintiff for two thousand dollars and defendant has appealed. The first question to determine is whether on the facts proven plaintiff has a cause of action.

On Sept. 18, 1909, plaintiff and a companion by the name of Parsons bought tickets at Hurley, a station on defendant's road south of Springfield and intended to go over defendant's road to Crane, a station a few miles farther south, to attend a street fair. The train on which they were to go was a mixed train with nine empty freight cars next to the engine, then five loaded freight cars, then two passenger coaches in the rear. This train carried passengers regularly and was a daily train running on a regular time schedule. Whether or not there were any exclusively passenger trains run over this road does not appear. When the train came in from the north it stopped with the engine and some cars south of the depot, and loaded cars opposite and north of the depot, and the passenger coaches, according to plaintiff's testimony, at least three hundred feet north from the depot. The train remained there about ten minutes, during which time freight was unloaded and the nine empty cars switched to another track. The plaintiff and his companion did not attempt to board the train until after it started and then attempted to board it while in motion. Parsons got safely aboard but plaintiff's foot slipped off the step while he was attempting to get on board; he fell, and his right foot was badly crushed by the train.

The testimony in behalf of plaintiff as to the circumstances attending the injury is substantially as follows: That the platform was made of minning chats and for a distance of 135 feet north of the depot was 12 to 15 feet wide, then from there on for some distance there was what plaintiff's witnesses termed a walk of the same material about four feet wide. That when this train came in, it stopped with the passenger

coaches at least three hundred feet north of the depot and along side the chat walk. That the usual practice of defendant in stopping its mixed trains going south was to stop them so the passenger coaches would be opposite the platform, but if not so stopped, the train would be pulled up and stopped again with the coaches at that point for the reception of passengers before leaving the station. While these witnesses did not directly explain what they meant by "the platform", it may be inferred that they meant the portion that was twelve to fifteen feet wide. Plaintiff's testimony further showed that after the train started the conductor boarded it and as he did so hallooed, "All aboard." The train was then in motion and moving about as fast as a man would walk. Upon discovering that the train would not stop, plaintiff attempted to get on and as he did so, his foot slipped off the step, the motion of the train threw him down and his foot was crushed by the train. On cross-examination plaintiff admitted that the place at which the passenger coaches were stopped was a safe place at which to board the train and that he had ample time to have boarded it there had he desired to do so and gave as a reason for not doing so that he did not think it was right and he expected, because they were so far away, that the train would pull up and stop again. Defendant's testimony differed from plaintiff's as to the width of the narrow part of the chats, and tended to show that all the chats were put in at the same time and that all the ground covered with chats was used in the same way and that there was no custom to stop this train or its passenger coaches at at any particular place and that by reason of being required to handle freight and freight cars it was not practical to always stop it coaches at one place; but as the verdict is for plaintiff it must be upheld if there is substantial evidence to support it.

That it was the duty of defendant to furnish its passengers a reasonably safe and convenient place at

which to get on and off its coaches cannot be questioned. In the performance of this duty, however, it was not necessarily required to stop its passenger coaches at any particular part of the platform, or at the platform at all, so the place at which the coaches were stopped was a reasonably safe and convenient place for the accommodation of the passengers. [Deskins v. R. R., 151 Mo. App. 432, 132 S. W. 45.]

The fact that the train was a mixed one, carrying both passengers and freight and that the length of the train and the duty to handle freight at the station made it inconvenient to always stop at the same place is not important, except for its value as evidence bearing upon the question of what was the usual practice of the defendant in stopping the coaches of its mixed train going south at a certain point for the reception of passengers. The duty of the defendant to its passengers was not enlarged or restricted thereby. Ordinarily the carrier discharges its duty to its passengers in this regard by placing its coaches at a point reasonably safe and convenient for the use of its passengers in getting on and off its trains; but if it be shown, as plaintiff's testimony tended to show in this case, that the carrier usually placed its passenger coaches at or near a certain place, then a different rule obtains. When this custom exists, the passenger who knows of the custom has the right to assume, in the absence of notice to the contrary, that the coaches will be placed at the usual stopping place and be then given an opportunity to board the train at that place, and a failure to observe the usual practice in that particular by the carrier would be negligence. That the train may have stopped with the coaches at another point some distance away and remained there while the freight was being unloaded, and switching done, would not be notice to the passenger that he was expected to walk up the track, or platform, if it be so called, and board the train at an unusual place.

Plaintiff, of course, must show negligence on the part of defendant and that this negligence caused the injury complained of. He could only do that in this case by proving that defendant had a usual and customary place at which to stop the passenger coaches of its mixed trains going south on the schedule of this train, and that it departed from the usual practice on this day, and by reason thereof he was misled and induced to refrain from boarding the train while it was standing. Where the chats were, or how wide they were, or how long the train was, bears no relation to this case except as evidence to establish or disprove the usual custom of defendant in stopping its coaches at or near a certain place for the reception of passengers. So the call of "All aboard" by the conductor after the train started, if made by him, only went to the question of notice to plaintiff that the train would not stop again and was leaving the station. Plaintiff's testimony tended strongly to support the contention that defendant did usually stop its mixed trains going south on the schedule of this train, with its passenger coaches at or near a place much nearer the depot than they were stopped on this day and that he knew that fact and expected the train to pull up and stop again and for that reason did not go back to where the coaches were standing to get on board. That he only attempted to board the train after discovering that it was leaving the station and would not stop the coaches at the usual place. That the train was moving about as fast as a man would walk at the time he attempted to board it. We think his testimony made a prima facie case of negligence against the defendant and under the circumstances he was not guilty of contributory negligence, *per se*, in attempting to board the train at that time and the demurrer to the testimony was properly overruled. [Swigart v. R. R., 75 Mo. 475; Fulka v. R. R., 111 Mo. 335, 19 S. W. 818; Murphy v. R. R., 43 Mo. App. 342; Sikenberg v. Transit

Co., 103 Mo. App. 442, 80 S. W. 360; Spencer v. Transit Co., 111 Mo. App. 653, 86 S. W. 593.]

While it has been often held that it is not negligence per se to attempt to board a slowly moving train as the cases just cited show, yet there can be no question that there is always more or less danger attending the act of boarding a moving train. The amount of danger depending upon the surroundings and speed of the train and the activity and experience of the party. Plaintiff in this case had never boarded a moving train before, and had there been no showing that he had the right to expect the train to stop the second time, and instead of boarding it while standing, he had purposely waited until it started and then attempted to board it, we should have no hesitancy in holding under these circumstances that he would have been guilty of negligence that would bar a recovery.

The instructions given on behalf of plaintiff are assailed on various grounds. We shall notice them sufficiently to indicate our view of the law of this case. Instruction No. 4, for plaintiff is as follows: "You are instructed that it was the duty of the defendant to stop its train on which plaintiff desired to take passage at its passenger platform for the purpose of allowing any one who desired to take passage thereon to board said train, unless you believe from the evidence that it had been accustomed to stop its mixed trains at some other place for such purpose, and plaintiff had a right to assume that the train on which he desired to take passage would be stopped at said platform, unless he was notified to the contrary in time to board said train while it was stationary, or unless it was the custom of defendant to stop said train for the purpose of receiving passengers before it reached said platform and draw it past said platform without stopping, and plaintiff knew, or by the exercise of ordinary care might have known of such custom; and stopping at the platform means

stopping so that the passenger coaches would be opposite said platform."

This instruction would have been correct had the platform been so constructed that there could be no doubt as to its boundaries. For example; had it been constructed of lumber and been elevated from the ground as many depot platforms are. With a platform constructed in that way this instruction would have been correct. Not, however, because it is the absolute duty of the carrier under all circumstances to stop its coaches opposite the platform, but because a passenger observing the platform would be led thereby to believe that the carrier usually received its passengers at that place and had provided the platform for that purpose. But in this case the platform is not elevated. It is constructed by placing chats upon the ground, and if we consider the platform as embracing only that portion where the chats were twelve to fifteen feet wide and designate the remainder as a walk, merely, yet this walk and the platform proper were both on the same level, constructed of the same material and a passenger could board a train as safely from one as the other. There was nothing about the construction of the platform itself, as distinguished from the walk, which would indicate to a passenger when this train stopped with its passenger coaches opposite the chat walk, that it would pull up and stop again before leaving the station. The only thing in this case that would justify the plaintiff in assuming that the train would be stopped the second time was the fact, if it were a fact, that it was the usual and customary practice to stop these coaches nearer the depot and plaintiff's knowledge of that custom.

The jury in following this instruction might assume, or find from the evidence, that, "The platform" meant only that portion where the chats were twelve to fifteen feet wide and if so then this instruction meant that it was the duty of defendant to stop the coaches of this

train opposite that part of the chats unless a custom to stop at another place was shown, and the burden of showing this custom was, in effect, placed upon defendant. Under this instruction, the jury may have found that there was no place where defendant usually stopped the coaches of its mixed trains, running on the schedule of this train, and yet have found against it because it did not, on this day, stop its coaches opposite what they believed to be the platform. This instruction was erroneous. It permitted a recovery upon a wrong basis. The essential facts underlying plaintiff's cause of action upon which he must depend to charge defendant with negligence and which he must prove to recover at all are, that the defendant did have a place at or near which it usually stopped the passenger coaches of its mixed trains, running south on the schedule of this train, and that it did not stop them there on the day of this injury. Unless these facts were proven plaintiff made no case. If they were proven, then it was wholly immaterial whether the usual stopping place was shown to be opposite what might properly be deemed the platform or not.

As this case is presented on the record here the negligence of defendant upon which plaintiff must rely can only be shown by proof that defendant did have a usual and customary place at or near which to stop its passenger coaches in mixed trains running south on the schedule of the train which caused plaintiff's injury and that that practice was not followed on this occasion and that issue should have been plainly presented in the instructions.

Other instructions given on behalf of plaintiff are assailed, and some of them are open to criticism, but what we have said will be a sufficient guide for the preparation of instructions in another trial and it will not be necessary to discuss plaintiff's other instructions or defendant's refused instructions in detail.

Judgment reversed and cause remanded. All concur.